Argued and submitted March 17, reversed and remanded with instructions
December 8, 1993

In the Matter of the Suspension of
the Driving Privileges of

Eric Ronald PIERCE,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(911134528; CA A74028)

864 P2d 1355

Harrison Latto, Assistant Attorney General, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

Motor Vehicles Division (MVD) appeals a judgment reversing its order suspending petitioner's driver license for refusal to take a breath test. ORS 813.100; ORS 813.410. The trial court set aside the suspension order based on its conclusion that there was not substantial evidence that petitioner was driving on a public highway and that the arresting officer did not have reasonable grounds to believe that petitioner was under the influence of intoxicants at the time that he drove his pickup truck. We reverse.

On September 28, 1991, petitioner's girlfriend, Johnson, was driving petitioner's pickup truck. At approximately 10:35 p.m., Officer Schultz assisted in arresting Johnson for driving under the influence of intoxicants (DUII) after she drove off the road, over a fence and hit a stop sign. At approximately 11:00 p.m., Johnson's sister, Boyd, drove the damaged truck 15 miles from the scene of the accident to Johnson's home. Boyd then walked to the Circle H tavern where petitioner had been drinking beer while he waited for Johnson to pick him up. After Boyd told petitioner about the arrest and the accident, they walked back to Johnson's house. When petitioner reached the front yard, a fight broke out between him and the still intoxicated Johnson. Boyd called the police at 12:12 a.m., and Schultz arrived at 12:45. Boyd told Schultz that petitioner and Johnson had to be separated three times and that petitioner had broken a window while trying to get into Johnson's house. Boyd said that she told petitioner to leave the area, but he would not leave before inspecting the damage to his truck. Boyd stated that she watched petitioner turn the truck around in the middle of the street in front of Johnson's house, make a right turn at the corner, and make another right turn into the driveway between the Johnson and Boyd houses.

Schultz arrested petitioner for fourth degree domestic violence and third degree criminal mischief. Schultz testified that petitioner appeared to be very intoxicated, had a strong odor of alcohol on his breath and had bloodshot and watery eyes. After placing petitioner in the patrol car, Schultz asked him where he had driven the car and "[petitioner] stated that he drove the car from the front yard to the back yard." When asked where he had been drinking, petitioner

stated that he drank at the Circle H. He was then taken to the county jail where he was given field sobriety tests at 1:30 a.m.[1] While administering the tests, Schultz asked petitioner how much he had had to drink. He responded that he drank four beers at the bar. Petitioner performed poorly on several of the tests and was charged with DUII and was cited for driving while suspended. At 1:50 a.m., Schultz asked him to take a breath test, and he refused.

MVD assigns error to the trial court's ruling that insufficient evidence supported the hearings officer's finding that petitioner drove on premises open to the public. Under ORS 813.100(1), a person who operates a motor vehicle on premises open to the public or on a state highway and is arrested for DUII is deemed to have consented to a chemical breath test. If a person deemed to have consented fails or refuses to submit to the test, the person's driving privileges are subject to suspension. ORS 813.100(3). A hearing may be requested to challenge the validity of the suspension. ORS 813.410(1).[2]

■■ At the hearing, petitioner claimed that he did not drive on a public road but drove on the grass around Johnson's house to reach the driveway. He argued that because he drove on private property only, he did not impliedly consent under ORS 813.100 to have his breath tested. In *Hilton v. MVD*, 308 Or 150, 775 P2d 1378 (1989), the Supreme Court held that a licensee must be driving a motor vehicle to be deemed to have consented to a breath test. If a licensee is not driving, the statute does not authorize the police to conduct the test, and any suspension resulting from a failed test is

---

[1] Schultz testified that, while at the scene, he suspected petitioner of DUII, but because of the commotion there, he did not conduct the field sobriety tests until they reached the jail.

[2] Under ORS 813.410(5), the scope of the hearing is limited to determining whether the following requirements, among others not relevant here, have been met:

"(a) The person, at the time the person was requested to submit to a test under ORS 813.100, was under arrest for driving while under the influence of intoxicants * * *.

"(b) The police officer had reasonable grounds to believe, at the time the request was made, that the person arrested had been driving under the influence of intoxicants * * *.

"(c) The person refused the test under ORS 813.100 * * *."

invalid.[3] Similarly, we hold that a licensee must drive "upon premises open to the public or the highways of this state" to be deemed to have impliedly consented to the breath test. If petitioner did not drive on a public road, Schultz had no authority to request that he submit to the test, and any suspension flowing from that request is invalid.

■ ■ Our review is of the agency's order, not the trial court's decision. *Ahlbin v. MVD*, 113 Or App 441, 833 P2d 1291 (1992). Accordingly, the question presented is whether the record contains substantial evidence to support the hearings officer's finding that petitioner drove on premises open to the public. We conclude that there is substantial evidence to support the hearings officer's finding.

■ Schultz testified that the witness, Boyd, told him that she had watched petitioner make a U-turn in the middle of the street and drive around the corner onto a second street before pulling into the driveway. As mentioned above, petitioner claimed that he did not drive on the street but only across Johnson's yard. The hearings officer, however, believed Schultz's version of what occurred. He specifically held that petitioner's testimony lacked credibility, stating:

"Petitioner utterly failed to produce any credible reason for why he would deliberately choose to keep his vehicle off the street, and drive through the front yard of his girlfriend's home * * *."[4]

Petitioner argued below that the hearsay testimony in support of the hearings officer's finding was inadmissible, because it was offered to prove a fact necessary to uphold the

---

[3] Before *Hilton*, our analysis focused on whether an officer had *reasonable grounds* to believe that a licensee was driving. *See Garcia v. MVD*, 77 Or App 172, 174, 711 P2d 219 (1985); *Leabo v. SER/Motor Vehicles Division*, 46 Or App 55, 59, 620 P2d 317, *rev den* 289 Or 337 (1980). After *Hilton*, a suspension is invalid absent a finding that a licensee was, in fact, driving. *Hilton v. MVD, supra*, 308 Or at 156.

[4] When asked why he drove on the yard instead of going out on the street, he responded:

"A 'Cause I couldn't even see — couldn't hardly see. I just wanted to go slow, and I wasn't sure if the pieces were falling off the truck. * * *

"* * * * *

"A Well, the headlights were pointing down. I could kind of just barely see out in front * * *."

However, not more than an hour earlier, Boyd was able to drive the truck 15 miles from the scene of the accident to Johnson's home.

suspension. He also argued that, in any event, the evidence was insufficient to support a finding that he drove on the public road. There is no question that hearsay testimony is admissible in an administrative hearing. *See Clark v. MVD (A41313)*, 89 Or App 254, 748 P2d 178 (1988). ORS 183.450(1) governs the admission of evidence in contested cases and provides, in part:

> "Irrelevant, immaterial or unduly repetitious evidence shall be excluded * * *. All other evidence of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs shall be admissible."

Schultz's testimony as to information provided to him by Boyd was thus admissible in the administrative hearing.

The remaining question is whether the hearsay testimony constitutes substantial evidence to support the hearings officer's finding. It is clear that, under some circumstances, hearsay evidence may be substantial evidence to support a finding. In *Reguero v. Teacher Standards and Practices*, 312 Or 402, 822 P2d 1171 (1991), the court specifically rejected the "residuum rule," under which a finding based solely on hearsay testimony can never be supported by substantial evidence. The court, persuaded by the uniform rejection of the rule by leading scholars in the law of evidence and by the number of courts that have abandoned the rule after years of applying it, stated:

> "[W]e reject the residuum rule and affirm the Court of Appeals' holding that hearsay evidence alone, even if inadmissible in a civil or criminal trial, is not incapable of being 'substantial evidence' * * *." 312 Or at 417.

■ The court in *Reguero* explained that the determination of whether substantial evidence supports an agency's finding is case specific and that, in making that determination, we must decide whether the agency's finding is reasonable in the light of countervailing as well as supporting evidence. 312 Or at 417-18. In making that assessment, a variety of factors may be considered, such as

> "the alternative to relying on the hearsay evidence; the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; the state of the supporting or opposing evidence, if any; the degree of lack of efficacy of cross-

examination with respect to the particular hearsay statements; and the consequences of the decision either way." 312 Or at 418.

Here, the record contains no indication that Boyd, the hearsay declarant, was unavailable to testify; thus, there may have been an alternative to relying on the hearsay testimony. In addition, the fact of whether petitioner drove on a public road was important to the outcome of the case. Nonetheless, after considering the countervailing and supporting evidence on this issue, we believe that the agency's finding of substantiality was reasonable. First, in contrast to the evidence in *Reguero*, none of petitioner's opposing evidence casts doubt on the reliability of Boyd's statements. Additionally, the record does contain evidence that casts doubt on petitioner's testimony. As the hearings officer recognized, petitioner's stories contained significant inconsistencies and failed to credibly explain why he would drive across the yard. Also, Schultz testified that he did not notice any tire tracks in the yard. We conclude that the hearings officer's finding that petitioner did drive on premises open to the public was reasonable in light of the countervailing as well as supporting evidence.

■ MVD next argues that the trial court erred when it found insufficient evidence to support the hearings officer's conclusion that Schultz had reasonable grounds to believe that petitioner was under the influence of intoxicants when he drove his truck. ORS 813.410(5)(b).[5] We agree with MVD. As we said in *Clark v. MVD (A41402)*, 89 Or App 250, 252, 748 P2d 176 (1988), "[t]he issue is not whether petitioner was in fact driving under the influence, but whether the officer reasonably believed that he was."

Schultz observed that petitioner had a strong odor of alcohol on his breath and had bloodshot and watery eyes. He admitted to Schultz that he had been drinking at a bar just before driving. He told Schultz that he drank four beers while at the bar. Although he later asserted that his appearance of intoxication and his poor performance on the field sobriety tests were the results of drinking tequila and gin *after* he drove, petitioner did not tell Schultz, at any time, of this

[5] *See supra* n 2.

subsequent drinking. In addition, Schultz testified that "[Boyd] stated that she did not observe [petitioner] drinking any alcohol from the time that he arrived at the house." In *Wood v. MVD*, 93 Or App 575, 579, 763 P2d 190 (1988), we said that

"it was reasonable to conclude that, because petitioner was under the influence at the time of the arrest and because it reasonably appeared that he had not consumed any alcoholic beverage since driving, he had driven * * * under the influence."

We similarly conclude that the evidence here is sufficient to support the hearings officer's finding that Schultz had reasonable grounds to believe that petitioner was under the influence of intoxicants at the time that he drove.

Reversed and remanded with instructions to enter order of suspension pursuant to *Wimmer v. MVD*, 83 Or App 268, 730 P2d 1297 (1986).