Argued and submitted December 5, 2000, affirmed January 24, 2001

In the Matter of the Suspension of
the Driving Privileges of

DANIEL BOYD COLE,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Appellant.*

(9902-01073; CA A108349)

17 P3d 573

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Richard Lee Barton argued the cause for respondent. With him on the brief was Wayne Mackeson.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Lipscomb, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

The Driver and Motor Vehicle Services Branch (DMV) appeals from the circuit court's reversal of a DMV order affirming the suspension of petitioner's driving privileges under ORS 813.410 for failure of an alcohol breath test in violation of ORS 813.100. DMV assigns error to the circuit court's conclusion that petitioner's due process rights were violated when petitioner was denied the opportunity to either subpoena or cross-examine "a critical witness so as to test the facts as stated by that witness in his police report." We conclude that there was not substantial evidence to support the DMV determination that the initial stop of petitioner was valid. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 822 P2d 1171 (1991). Accordingly, we affirm.

At 1:20 a.m. on December 7, 1998, Gresham Police Sergeant Gurkman stopped petitioner's car and spoke with him. Shortly thereafter, Gresham Police Officer Nguyen arrived on the scene. Gurkman told Nguyen that he suspected that petitioner had been driving under the influence of intoxicants (DUII) and, in response, Nguyen had petitioner perform several field sobriety tests. From the results of those tests, Nguyen concluded that it was more likely than not that petitioner was intoxicated and arrested him for DUII. Thereafter, Nguyen took petitioner to the Gresham police station, where he was advised of his statutory rights and consequences. ORS 813.130. Petitioner then submitted to a breath test, which registered a blood alcohol level of 0.12.

Petitioner subsequently received proper notice of intent to suspend his driving privileges and of his right to request a hearing contesting that suspension. ORS 813.100(3)(b). On December 15, 1998, petitioner submitted a timely request for an administrative hearing pursuant to ORS 813.410. In his request, petitioner sought discovery of "copies of any and all police reports in the possession of the arresting officer and agency in this case." Petitioner did not request that the agency subpoena any witnesses.

At petitioner's hearing on December 28, 1998, Nguyen, the arresting officer, appeared pursuant to a subpoena by DMV. Gurkman, the stopping officer, did not

appear at the hearing. Nevertheless, DMV sought to introduce a police report prepared by Gurkman. That report detailed the basis for the stop and explained particularly that, immediately preceding the stop, petitioner's vehicle crossed the road's center line numerous times, exceeded the speed limit by 20 miles per hour, and made an unsignaled lane change. Petitioner was unaware of that report until it was produced at hearing, and Gurkman's name did not appear in any public record available to petitioner.

Petitioner objected to the admission of Gurkman's report and, in the alternative, moved to continue the hearing until Gurkman could be subpoenaed. In objecting, petitioner's counsel argued:

"Well, it appears to me that Officer Nguyen is not the stop officer. * * * And that wasn't apparent until this morning. Had we known that he was not the stop officer, we would've placed under subpoena the stop officer. So that we would have the adequate opportunity to confront, cross-examine, and test the—the validity of the stop in this case. Because the validity of the stop is the heart of our defense this morning. And so if this officer is permitted to relate through hearsay means, or the agency receives a report, we've not been put on any notice that there is a non—that this agency witness was other than the stop officer. Because he is the arresting officer, he's the one that issued the citation. Until today, we didn't know that he was not the stop officer. He did not witness any driving * * *."

The hearing officer overruled the objection and denied petitioner's request for a continuance.[1] Ultimately, the hearing officer, based solely on Gurkman's police report,[2] upheld the validity of the stop and, after concluding that there was probable cause to arrest petitioner, affirmed the suspension of petitioner's driver's license.

---

[1] The hearing officer denied petitioner's request for a continuance because, in the hearing officer's view, petitioner's proffered basis for the request—the need to subpoena the stopping officer—did not justify a continuance under DMV administrative policy and because granting the request "would be a new or a precedent-setting" allowance. The hearing officer was correct. The circumstances here did not fall within the definition of "other just cause" set out in OAR 735-090-0000(5).

[2] Nguyen, the arresting officer, did not—and apparently could not—testify about the circumstances leading to the stop. Petitioner did not testify at the DMV hearing.

Petitioner sought judicial review pursuant to ORS 813.450. He argued, predominantly, that (1) under the standards articulated in *Reguero*, Gurkman's report did not constitute substantial evidence of the validity of the stop; and (2) in all events, because petitioner had no meaningful opportunity to secure Gurkman's attendance by subpoena and continuance, reliance on that report would offend due process. The circuit court set aside DMV's order of suspension, concluding that "there was no means available to determine the identity of the stopping officer or to obtain a copy of his police report" and that, consequently, the administrative hearing did not comport with due process:

> "[Petitioner] is entitled to a due process hearing at which the state has the burden of proving, among other things, that the initial traffic stop was valid. The state may make its proof, including the validity of the traffic stop by hearsay reports, but the [petitioner] has the right to use compulsory process to confront and cross-examine those making the assertions. Here, it was impossible for the defendant to determine the identity of the stopping officer so as to subpoena that officer to the administrative hearing. The state contends that the inability to subpoena a critical witness so as to test the facts as stated by that witness in his police report was not a necessary right of the defendant at that hearing.
>
> "That argument is incorrect. While the law does allow the state to prove essential elements of its case by hearsay, due process requires that the defendant, at the least, have an opportunity to subpoena critical witnesses to subject their hearsay assertions to cross-examination. To have any type of hearing, a defendant has to at least have the right to subpoena witnesses whose out of court, unsworn, written statements are used against him. To rule otherwise means that the administrative hearing is no hearing at all, but is simply an administrative review of the factual sufficiency of the state's assertions with no meaningful opportunity to challenge the truthfulness or accuracy of those assertions."

On appeal, DMV assigns error to the circuit court's conclusion, arguing that, under *Reguero*, Gurkman's report provided substantial evidence as to the validity of the stop and that, notwithstanding petitioner's lack of advance

knowledge of Gurkman's identity and the denial of a contin-
uance, the hearing officer's reliance on Gurkman's report did
not offend due process. As discussed below, we conclude that,
under *Reguero*'s analysis, Gurkman's report did not consti-
tute substantial evidence establishing the stop's validity. We
affirm on that basis and, consequently, do not reach or
address the broader constitutional basis for the circuit court's
holding.

In *Reguero*, the petitioner, a teacher whose employ-
ment had been terminated, applied to the Teacher Standards
and Practices Commission (TSPC) to reinstate his teaching
license. At the petitioner's request, the TSPC held a con-
tested case hearing to determine whether the petitioner was
fit to serve as a teacher. The TSPC asserted that the peti-
tioner was not of "good moral character" and, in support of
that allegation, presented, *inter alia,* evidence that the peti-
tioner had previously engaged in inappropriate sexual con-
duct with two female students. Neither of the two students
testified. Rather, the TSPC introduced "hearsay and multiple
hearsay testimony," *Reguero*, 312 Or at 405, regarding the
petitioner's alleged sexual contact with the two students, as
well as hearsay regarding student complaints about the peti-
tioner's inappropriate behaviors. That evidence was pre-
sented through police reports and the testimony of witnesses
who had interviewed the students.

The petitioner testified and admitted that he had
inadvertently touched one of the female students, but other-
wise denied the allegations. He also presented other counter-
vailing evidence. Relying entirely on the hearsay evidence,
the TSPC found that the petitioner had "engaged in inappro-
priate sexual behavior" with the two students and that he
had also engaged in other inappropriate conduct. Conse-
quently, the TSPC concluded that the petitioner lacked "good
moral character to serve as a teacher" and denied his appli-
cation for reinstatement of his teaching license.

The petitioner sought review, asserting, among
other things, that the TSPC's findings were unsupported by
substantial evidence in that they were based exclusively on
hearsay. We rejected that argument—*i.e.*, that hearsay evi-
dence is *per se* incapable of being "substantial evidence"—

and held that there was substantial evidence to support the findings of the TSPC. *Reguero v. Teacher Standards and Practices*, 101 Or App 27, 789 P2d 11 (1990), *rev'd on other grounds* 312 Or 402, 822 P2d 1171 (1991).

The Supreme Court affirmed our holding that hearsay evidence is not *per se* incapable of constituting substantial evidence but concluded that, in the particular circumstances presented, the hearsay did not constitute substantial evidence. In so holding, the court described the inquiry for assessing the substantiality of hearsay evidence:

> "The 'substantial evidence' inquiry necessarily is case specific. * * * [I]n assessing the substantiality of the evidence or lack of it, variable circumstances may be considered, such as: [1] the alternative to relying on the hearsay evidence; [2] the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; [3] the state of the supporting or opposing evidence, if any; [4] the degree of lack of efficacy of cross-examination with respect to the particular hearsay statements; and [5] the consequences of the decision either way." *Reguero*, 312 Or at 418.

The court considered each of those variables and concluded that the TSPC erred in relying on the hearsay and, because that hearsay was essential to the TSPC's findings, those findings were not supported by substantial evidence:

> "When unsworn hearsay constitutes the major * * * support for the administrative decision, the importance of providing the adversary (here, the petitioner) with the opportunity to test on cross-examination each of the available declarants' perception, memory, narration, and veracity is undeniable. TSPC had no basis for evaluating the credibility of the declarants of the challenged hearsay on which it based its order.
>
> "Even where hearsay is sufficiently reliable to be admissible and might be relied on when the consequences of the decision would be minor, that same hearsay might not be relied on when the consequences of the decision would be a profound impact on, for example, the ability of an individual to pursue a chosen profession." *Id.* at 421.

*Reguero*'s balancing of multiple factors is, thus, "case specific," *id.* at 418; its application is, at least potentially, pliable.

*See id.* at 422 (Peterson, J., concurring) ("Application of these factors leads to uncertain results, for the factors themselves are elastic."); *see also Johnson v. Civil Service Board,* 161 Or App 489, 985 P2d 854, *on recons* 162 Or App 527, 986 P2d 666 (1999) (applying *Reguero* factors; concluding that police officer's hearsay testimony recounting accusations of public indecency did not constitute substantial evidence that the petitioner had, in fact, engaged in such conduct).

In this case, the first *Reguero* factor—whether there are alternatives to relying on the hearsay evidence—militates against reliance on Gurkman's report. DMV knew Gurkman's identity and had the ability to secure and compel his attendance through subpoena. *See* ORS 813.410(4)(f) ("[T]he department or its authorized representative may administer oaths and shall issue subpoenas for the attendance of witnesses at the hearing requested by the person or the department * * *.").[3] Nevertheless, DMV failed to do so and offered no explanation for that failure. *See Reguero,* 312 Or at 419 ("[The declarants] were readily available to be called as witnesses. No reason was given [as to] why they did not testify."). Thus, DMV has not established that it had to rely on the police report, because Gurkman was unavailable to give live testimony. *Cf. Pierce v. MVD,* 125 Or App 79, 85, 864 P2d 1355 (1993) (where there is no indication that the declarant is unavailable to testify, "there may have been an alternative to relying on the hearsay testimony"); *accord Johnson,* 161 Or App at 504 (first *Reguero* factor favored reliance on hearsay where proponent of hearsay offered detailed explanation of its unsuccessful efforts to secure hearsay declarant's attendance at hearing).

The second *Reguero* factor is "the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding." *Reguero,* 312 Or at 418. Here, DMV acknowledges that "Gurkman's report formed the basis for the agency's finding regarding the stop of [petitioner's] vehicle." In that regard, this case is indistinguishable from

---

[3] Conversely, petitioner did not know Gurkman's identity before the hearing and, thus, could not compel his attendance. Moreover, when petitioner sought a continuance so that he could cross-examine Gurkman, his request was denied. Petitioner's inability to secure Gurkman's attendance buttresses our assessment of the first *Reguero* consideration.

*Reguero*, where the court stated that the importance of the hearsay was "indisputable" because the agency's disposition was "based *entirely* on hearsay." *Reguero*, 312 Or at 419 (emphasis in original). Here, Gurkman's report was the *only* evidence in the record from which the hearing officer could assess the lawfulness of Gurkman's initial stop of petitioner. Thus, the content of Gurkman's report was essential to the "outcome of the proceeding." *Id.*; *compare Hause v. MVD*, 127 Or App 421, 423-25, 873 P2d 374, *rev den* 319 Or 281 (1994) (unavailable officer's report, when corroborated by petitioner's own testimony that he "may well have been weaving" constitutes substantial evidence to support the agency conclusion that stop was lawful).[4]

The third *Reguero* factor "the state of the supporting or opposing evidence"—appears to be neutral. Because Gurkman's report was the sole evidence of the circumstances of the stop, there was no corroborating or controverting evidence.

*Reguero*'s fourth consideration—the potential efficacy of cross-examination—favors petitioner. The *Reguero* court observed that

> "[w]hen unsworn hearsay constitutes the major (in this case, the *entire*) support for the administrative decision, the importance of providing the adversary (here, the petitioner) with the opportunity to test on cross-examination each of the available declarants' perception, memory, narration, and veracity is undeniable." *Reguero*, 312 Or at 421 (emphasis in original).

Relying on that statement, in *Johnson* we explained that, "given the critical importance of [the declarant's statements], and the classic susceptibility of such statements to rigorous

---

[1] Thus, in *Hause*, DMV's determination as to the lawfulness of the stop was not based exclusively on the hearsay report. "In *Reguero*, the agency's finding was based entirely on the hearsay testimony. Here, other evidence in the record supports the agency's determination. Petitioner himself testified that he may well have been weaving." *Hause*, 127 Or App at 424. That fact materially distinguishes *Hause* from this case. *See also Pierce v. MVD*, 125 Or App 79, 85, 864 P2d 1355 (1993) (DMV's finding, based in part on testifying officer's recounting of alleged witness's hearsay, satisfied *Reguero* where petitioner's testimony at hearing was implausible, internally inconsistent, and controverted by physical evidence).

cross-examination," the ability to cross-examine the declarant was essential. *Johnson*, 161 Or App at 505-06. So too here.

Finally, the fifth *Reguero* factor—the consequences of DMV's decision—while significant, were not devastating. *See Hause*, 127 Or App at 424 (license suspension arguably less severe than refusal to reinstate teaching license in *Reguero*).

We conclude that, on balance—and particularly given the lack of any explanation for Gurkman's failure to appear, the centrality and exclusivity of Gurkman's report as to a critical issue, and the potential efficacy of cross-examination—Gurkman's report did not, by itself, constitute substantial evidence of the validity of the stop. Because there was no other evidence of the circumstances leading to the stop, DMV necessarily erred in finding that the stop was valid and, consequently, ultimately erred in affirming petitioner's license suspension.[5] The trial court correctly set aside DMV's suspension of petitioner's driving privileges.

Affirmed.

---

[5] DMV's reliance on *Felling v. Motor Vehicles Div.*, 30 Or App 479, 567 P2d 581 (1977), is unavailing for at least two reasons. First, *Felling* predates and does not anticipate *Reguero*. Second, *Felling* stands, at most, for the proposition that hearsay testimony is admissible evidence in license suspension hearings and that the admission of hearsay does not *per se* "constitute a denial of due process." 30 Or App at 481.