Argued and submitted September 9, 2003, in *Cole*, decision of the Court of Appeals and judgment of the circuit court affirmed, case remanded to DMV for further proceedings; in *Dinsmore*, decision of the Court of Appeals affirmed, order of DMV reversed, and case remanded to DMV April 8, 2004

In the Matter of the Supension of
the Driving Privileges of

Daniel Boyd COLE,
*Respondent on Review,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Petitioner on Review.*

(CC 9902-01073; CA A108349; SC S48815)

Karen DINSMORE,
*Respondent on Review,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Petitioner on Review.*

(DMV No. 81427; CA A109749; SC S49117)
(Consolidated for Argument and Opinion)

87 P3d 1120

Christina M. Hutchins, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Wayne Mackeson, of Birmingham & Mackeson, L.L.P., Portland, argued the cause and filed the brief for respondent on review Cole. With him on the brief was Richard Lee Barton, of Barton & Associates, Portland.

Robert J. McCrea, Eugene, argued the cause and filed the brief for respondent on review Dinsmore.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

BALMER, J.

** Kistler, J., did not participate in the consideration or decision of this case.

## BALMER, J.

In these cases, which we consolidated for argument and decision, the Driver and Motor Vehicle Services Branch (DMV), seeks review of Court of Appeals decisions holding that hearsay evidence presented in two driver license suspension hearings did not constitute substantial evidence sufficient to support DMV's orders suspending the driver licenses. *Cole v. DMV*, 172 Or App 132, 17 P3d 573 (2001); *Dinsmore v. DMV*, 175 Or App 509, 28 P3d 1268 (2001). Substantial evidence supports a finding made in an administrative hearing when the record, viewed as a whole, permits a reasonable person to make that finding. ORS 183.482(8)(c).[1] The question before us on review is whether this court's decision in *Reguero v. Teacher Standards and Practices*, 312 Or 402, 822 P2d 1171 (1991), articulating the standards to be used to determine whether and when hearsay evidence may be substantial evidence under that statute, requires a different outcome in these cases. For the reasons that follow, we affirm the decision of the Court of Appeals in *Cole* and the judgment of the circuit court, although on different grounds than the Court of Appeals, and remand the case to DMV for further proceedings. In *Dinsmore*, we affirm the decision of the Court of Appeals, reverse the order of DMV, and remand the case to DMV.

## I. BACKGROUND

As we will describe in greater detail, DMV suspended the driver licenses of Cole and Dinsmore after they had been arrested for separate traffic violations. They both requested hearings to contest those suspensions, and, at those hearings, DMV offered hearsay evidence in the form of police reports. The presiding hearing officers made findings in DMV's favor based on information contained in those reports, and, as a result, DMV ordered that Cole's and Dinsmore's licenses remain suspended. Before discussing the

---

[1] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order [of the agency] if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

specific facts of the cases, it is useful first to review this court's decision in *Reguero*, because that case represents this court's most comprehensive discussion of the substantial evidence test in administrative proceedings and of the permissible use of hearsay evidence in those proceedings.

Reguero was a teacher who had been fired by a school district and whose state teaching license had expired after his termination. 312 Or at 404. In a contested case hearing at which he sought to have his license reinstated, the Teacher Standards and Practices Commission (TSPC) introduced hearsay and multiple hearsay evidence[2] to support its allegations that Reguero had engaged in inappropriate sexual contact with two female students. *Id.* at 404-05. The hearsay evidence included statements that the two students had made; neither student testified at the hearing. *Id.* at 405. Reguero presented countervailing evidence, including teachers and school employees who refuted a number of the students' claims. *Id.* Following the hearing, TSPC denied Reguero's license application based on its findings that he had engaged in inappropriate sexual contact and therefore "lack[ed] good moral character to serve as [a] teacher." *Id.* at 408.

On review, this court analyzed the record to determine whether evidence sufficient to satisfy the substantiality requirement of ORS 183.482(8)(c) supported TSPC's findings. *Id.* at 417-18. The court noted that, under the Oregon Administrative Procedures Act (APA), "[h]earsay evidence is as admissible under ORS 183.450(1) as any other evidence as long as it meets the statutory test of reliability."[3] *Id.* at 417

---

[2] We use the term "hearsay" in this opinion in the same manner as this court used it in *Reguero*:

"[T]he term 'hearsay' means 'a statement, other than one made by the declarant while testifying at the * * * hearing, offered in evidence to prove the truth of the matter asserted.' OEC 801(3). A 'declarant' is a person who makes a statement. OEC 801(2). The phrase 'multiple hearsay' or 'hearsay within hearsay' refers to hearsay (*e.g.*, police report) that contains within it another level (or levels) of hearsay (*e.g.*, a bystander's statement)."

312 Or at 405 n 4.

[3] ORS 183.450(1) provides, in part:

"Irrelevant, immaterial or unduly repetitious evidence shall be excluded but erroneous rulings on evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party. All

(footnote omitted). The court explained that ORS 183.482(8)(c) does not provide "for weighing some classes of evidence in the record more heavily *as classes* than other classes of evidence in the record * * * as a matter of law." *Id.* (emphasis in original). The court adopted the reasoning of the Court of Appeals that the legislature had not intended for hearsay evidence that was reliable enough to be admissible under ORS 183.450(1) to be "*categorically* incapable of being substantial enough to permit a reasonable person to find in accordance with it under ORS 183.482(8)(c)." *Id.* (emphasis in original; internal citation omitted). Thus, the court rejected the "residuum rule"[4] and affirmed the Court of Appeals' holding that "hearsay evidence alone, even if inadmissible in a civil or criminal trial, is not incapable of being 'substantial evidence' under ORS 183.482(8)(c)." *Id.*

The court noted that, rather than engaging in "any categorical method of determining substantiality," the court must make a case-specific inquiry to determine "whether the finding of substantiality is reasonable in the light of countervailing as well as supporting evidence." *Id.* at 417-18. The court stated that "variable circumstances may be considered" when assessing whether proffered hearsay evidence constitutes substantial evidence in a given case and then provided a nonexclusive list of factors:

"[1] [T]he alternative to relying on the hearsay evidence; [2] the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; [3] the state of the supporting or opposing evidence, if any; [4] the degree of lack of efficacy of cross-examination with respect to the particular hearsay statements; and [5] the consequences of the decision either way."

---

other evidence of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs shall be admissible. * * * Objections to evidentiary offers may be made and shall be noted in the record. Any part of the evidence may be received in written form."

[4] Under the so-called "residuum rule," an administrative agency's findings must be supported by some evidence that would be admissible in a civil or criminal trial. *Reguero*, 312 Or at 414-15. Thus, "a finding based solely on hearsay that would not be admissible in a civil or criminal trial could never be supported by substantial evidence in the whole record." *Id.* at 415. As noted, this court in *Reguero* expressly rejected the residuum rule.

*Id.* at 418. The court also noted that "[a]n underlying concern must always be fundamental fairness." *Id.* n 23.

Notwithstanding its earlier conclusion that hearsay *could* constitute substantial evidence under ORS 183.482(8)(c), the court went on in *Reguero* to find that TSPC's findings were not supported by substantial evidence and, thus, its conclusions of law based on those findings were impermissible. *Id.* at 422. The court emphasized that the agency's findings were based entirely on hearsay and that no reason had been given as to why TSPC had not called the alleged victims as witnesses, despite their being available. *Id.* at 419. The court noted that the witnesses that did testify on behalf of TSPC had been permitted to express their opinions regarding the alleged victims' credibility "based on * * * hearsay [and] multiple hearsay." *Id.* Moreover, the court stated that,

> "[w]hen unsworn hearsay constitutes the major (in this case, the *entire*) support for the administrative decision, the importance of providing [the petitioner] with the opportunity to test on cross-examination each of the available declarants' perception, memory, narration, and veracity is undeniable."

*Id.* at 421 (emphasis in original). Thus, although hearsay evidence *may* constitute substantial evidence, nothing in *Reguero* compels the conclusion that the hearsay evidence in a particular case *will* satisfy that standard. *See also Younger v. City of Portland*, 305 Or 346, 358, 752 P2d 262 (1988) (noting that, under LUBA provisions analogous to APA, whether particular decision is supported by substantial evidence depends upon evaluation of unique evidence in each case).

## II.  FACTS

With that background in mind, we now return to the facts in the cases before us, which we take from the record and the Court of Appeals opinion in each case. We begin with *Cole*. In 1998, Gresham Police Sergeant Gurkman stopped Cole's car. According to a written report that Gurkman prepared, Gurkman had observed Cole commit a number of traffic infractions, including crossing the center line of the road numerous times, exceeding the speed limit by 20 miles per

hour, and making an unsignaled lane change. Gurkman stopped him, and, shortly thereafter, Gresham Police Officer Nguyen arrived at the scene. Gurkman told Nguyen that he suspected that Cole had been driving under the influence of intoxicants (DUII), and Nguyen requested that Cole perform several field sobriety tests. After Cole performed the tests, Nguyen concluded that he had probable cause to arrest Cole for DUII.[5] Thereafter, Cole submitted to a chemical breath test, which registered his blood alcohol level as 0.12 percent.

DMV notified Cole that it intended to suspend his driving privileges. A second notice of Cole's rights and procedures in a DMV implied consent hearing also informed Cole that he could request DMV to subpoena witnesses on his behalf to appear at the hearing.[6] Cole requested a hearing to contest the suspension and, in preparation for the hearing, sought discovery of "photocopies of all documents that [were] public records relating to [his] hearing in the possession of [DMV]" and "copies of any and all police reports in the possession of the arresting officer and agency in this case." DMV responded by providing Cole with a report prepared by Nguyen and a separate page on which appeared the following statement: "Under difficulty presenting documents, see Sergeant German's [sic] report." DMV did not provide Cole with any report prepared by Gurkman.

At Cole's hearing, Nguyen testified, but Gurkman did not appear. Cole had not requested DMV to subpoena any witnesses; however, DMV had issued its own subpoena for Nguyen. DMV sought to introduce a report prepared by Gurkman to prove that Gurkman had stopped Cole lawfully.[7]

---

[5] ORS 813.010(1)(a) provides that a person commits the offense of DUII if the person drives a vehicle while the person "[h]as 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath."

[6] A party in a contested case before an agency may request that the agency subpoena witnesses on his or her behalf pursuant to ORS 183.440, which provides, in part:

"(1) An agency may issue subpoenas on its own motion in a contested case. In addition, an agency or hearing officer in a contested case may issue subpoenas upon the request of a party to a contested case upon a showing of general relevance and reasonable scope of the evidence sought. A party entitled to have witnesses on behalf of the party may have subpoenas issued by an attorney of record of the party * * *."

[7] Because Nguyen had not been the stopping officer, he had not witnessed any of the driving and therefore could not testify whether Cole had been stopped lawfully.

Cole objected to the admission of the Gurkman report, arguing that he had not received a copy of the report and did not know that Nguyen was not the stopping officer until the hearing. Cole further alleged that, had he known Gurkman's identity, he would have subpoenaed him to appear at the hearing. Cole contended that the "heart of [his] defense" was the validity of the stop and, therefore, it was essential that he have "adequate opportunity to confront, cross-examine, and test" that validity.

The hearing officer overruled Cole's objection to the admission of the Gurkman report and denied his request for a continuance.[8] Cole cross-examined Nguyen but presented no contrary evidence, stating, "We'll produce no evidence, in light of the absence of Sergeant Gurkman."

At the conclusion of the hearing, the hearing officer upheld the lawfulness of the stop solely on the basis of Gurkman's report, finding that "Gurkman's report provides a sufficient basis for the traffic stop * * *. No evidence contradicted the information contained in Gurkman's report." After concluding that Nguyen had had probable cause to arrest Cole, the hearing officer affirmed the suspension of Cole's driver license.

Cole sought judicial review pursuant to ORS 813.410 and ORS 813.450.[9] He argued that the hearing officer's finding that he had been stopped lawfully was not supported by substantial evidence in the record. In addition,

---

[8] In the alternative to his objection to the admission of the Gurkman report, Cole had moved to continue the hearing until he could subpoena Gurkman. As the Court of Appeals explained:

"The hearing officer denied [Cole's] request for a continuance because, in the hearing officer's view, [Cole's] proffered basis for the request—the need to subpoena the stopping officer—did not justify a continuance under DMV administrative policy and because granting the request 'would be new or a precedent-setting' allowance. The hearing officer was correct. The circumstances here did not fall within the definition of 'other just cause' set out in OAR 735-090-0000(5)."

*Cole*, 172 Or App at 135 n 1. Since the time of Cole's hearing, OAR 735-090-0000 has been revised so that now someone in Cole's position would be able to request a continuance if a "necessary witness does not appear at the hearing because the necessary witness was unknown to the petitioning party prior to a recorded or reported hearing that determines the validity of a suspension of driving privileges[.]" OAR 735-090-0000(4)(b)(A).

[9] ORS 813.410 provides, in part:

Cole contended that, because he had not known Gurkman's identity before the hearing, he had not had a meaningful opportunity to secure Gurkman's attendance by subpoena and, therefore, reliance on Gurkman's report offended due process. The circuit court agreed with Cole's due process argument and set aside DMV's suspension order, concluding that Cole had had "no means available to determine the identity of the stopping officer or to obtain a copy of his police report" before his hearing. Consequently, the court held that the administrative hearing did not comport with due process:

> "While the law does allow the state to prove essential elements of its case by hearsay, due process requires that the defendant, at the least, have an opportunity to subpoena critical witnesses to subject their hearsay assertions to cross-examination. To have any type of hearing, a defendant has to at least have the right to subpoena witnesses whose out of court, unsworn, written statements are used against him. To rule otherwise means that the administrative hearing is no hearing at all, but is simply an administrative review of the facial sufficiency of the state's assertions with no meaningful opportunity to challenge the truthfulness or accuracy of those assertions."

DMV appealed, and the Court of Appeals affirmed. 172 Or App at 141. That court examined the hearsay evidence that DMV had offered in light of each of the *Reguero* factors and held that, "Gurkman's report did not, by itself, constitute substantial evidence of the validity of the stop." *Id.* The court concluded that the consequences of DMV's decision to suspend Cole's license were "significant," but not "devastating," and that the alternative to relying on the hearsay evidence "militates against reliance on Gurkman's report" because DMV knew of Gurkman's identity, could have compelled his attendance through subpoena, and failed to

---

"(7) * * * [A] person shall have the right to appeal any final order by the department after a hearing under [the Implied Consent Law] by filing a petition."

ORS 813.450 provides, in part:

"(4) Upon review in the circuit court and Court of Appeals, the court may affirm, reverse or remand the order as follows:

"* * * * *

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

explain why he did not testify. *Id.* at 139, 141. In addition, the court concluded that Gurkman's report had been determinative to the outcome of Cole's suspension hearing because it was "the *only* evidence in the record from which the hearing officer could assess the lawfulness of Gurkman's initial stop of [Cole]." *Id.* at 140 (emphasis in original). The court emphasized that it considered the ability to cross-examine Gurkman "essential."[10] *Id.* at 141.

Dinsmore also had her license suspended following a DMV hearing in which the hearing officer admitted hearsay evidence in the form of police reports and based her necessary findings of fact on that evidence. In 1999, Dinsmore's truck collided with two other vehicles that were stopped in her lane of travel on Highway 20. The collision killed one person and seriously injured another. State Trooper Johnson, who arrived at the scene after the accident, interviewed two witnesses—drivers of two cars that had been traveling in the opposite direction from Dinsmore when the collision occurred—and included their comments in his report. According to the report, those witnesses told Johnson that the vehicles that Dinsmore had struck with her truck had had their turn signals on at the time of impact and appeared to be waiting to turn left. Johnson noted that one of the witnesses described Dinsmore's vehicle as traveling "really fast" when it ran into the two stopped vehicles; the other witness opined that Dinsmore's vehicle "was going too fast." Johnson also interviewed Dinsmore and recorded in his report that she had told him that she had drunk one beer, was taking medications for high blood pressure and allergies, had slept only a few hours the night before, and had not seen the two vehicles in front of her. As a result of his on-site investigation, Johnson cited Dinsmore for DUII and reckless driving.

State Trooper Skinner, an accident reconstructionist for the Oregon State Police, prepared a collision reconstruction report based on Johnson's report, forensic tests performed on the victims' vehicles, and Skinner's own investigation of the accident scene. Skinner made findings

---

[10] Because the Court of Appeals affirmed on the narrower ground that substantial evidence did not exist to support DMV's findings, that court did not reach or address the due process violation that was the basis for the circuit court's holding.

regarding the conditions and grade of the road, and whether the victims' cars had functioning brake lights and operating turn signals when Dinsmore's truck collided with them. Based on those findings and the speed that Dinsmore had told Johnson that she had been traveling at the time of the accident, Skinner estimated that Dinsmore would have had more than 1,000 feet in which to see and react to the cars stopped in front of her. Skinner also concluded in his report that Dinsmore had been using her cell phone when she collided with the other vehicles. In addition, Skinner's report contained an estimate that Dinsmore's blood alcohol level at the time of the crash had been between 0.10 percent and 0.14 percent. He arrived at that estimate by calculating backwards from a breath test that Dinsmore had taken four hours after the accident and that registered her blood alcohol level as 0.06 percent.[11]

On the basis of Skinner's and Johnson's reports, DMV notified Dinsmore that it was suspending her driving privileges on the grounds that she had caused or contributed to an accident resulting in the death of another due to recklessness or criminal negligence and that she posed a potential danger to persons or property. Dinsmore requested and was granted a hearing, which was held in January 2000.

Although entitled to do so under ORS 183.400, Dinsmore had not requested DMV to subpoena either Johnson or Skinner on her behalf. DMV had issued subpoenas for the officers on its own motion, but neither appeared at the hearing. In their absence, DMV offered into evidence the reports that the officers had prepared. Dinsmore objected on the grounds that the reports constituted hearsay and double hearsay, and that due process required that she have the opportunity to cross-examine the officers regarding their investigation and the "underpinnings," accuracy, and sufficiency of the information contained in the reports. The hearing officer received the reports as evidence over Dinsmore's objection, reasoning in the final order that "hearsay is admissible in an administrative hearing. * * * The fact that the

---

[11] Skinner's report states that he used a "dissipation rate range of 0.01 [percent] to 0.02 [percent] per hour" in making his calculations.

reports are hearsay goes to their weight and not their admissibility."

At the hearing, Dinsmore presented witnesses and offered evidence that contradicted several of the assertions that Skinner had made in his report.[12] Dinsmore offered her cell phone records to show that she had not been on the phone at the time of the collision and a letter by a doctor stating his opinion that it would be very difficult to calculate accurately Dinsmore's blood alcohol level at the time of the accident. In addition, a witness testified to having seen Dinsmore maneuver her car out of a cramped parking space without any difficulty just before the collision.

Following the hearing, DMV issued its final order upholding Dinsmore's license suspension on the ground that, at the time of the accident, petitioner was "operating her vehicle either recklessly or with criminal negligence." *Former* ORS 809.410(15), *repealed by* Or Laws 2003, ch 402, §§ 6a, 43;[13] OAR 735-070-0130. The order contained findings of fact that were based almost entirely on the officers' reports. However, on the issues for which Dinsmore had presented evidence that contradicted the information in those reports, the hearing officer made findings in Dinsmore's favor, specifically, that she had not been on her cell phone or driving under the influence at the time of the accident.

Dinsmore sought judicial review of the DMV order, pursuant to ORS 183.482, arguing that DMV's decision to admit the police reports into evidence violated due process notions of "fundamental fairness" because she was denied an opportunity to cross-examine the officers who prepared the reports. In addition, Dinsmore contended that, because the reports formed the entire basis for the department's order, that order was not supported by substantial evidence.

---

[12] At the time of their administrative hearings, criminal charges were pending against both Dinsmore and Cole based on the incidents that led to their license suspensions; neither testified at their own hearings.

[13] The 2003 Legislative Assembly also passed ORS 809.417, which provides that the Department of Transportation "may suspend the driving privileges of a person who, while operating a motor vehicle, causes or contributes to an accident resulting in death" if the department has "reason to believe" that the person's recklessness or criminal negligence "caused or contributed to the accident." ORS 809.417(3)(a).

Relying on its recent decision in *Cole*, the Court of Appeals concluded that DMV's conclusions were not supported by substantial evidence:[14]

> "We see no meaningful distinction between this case and *Cole*. As in *Cole*, the department does not dispute that the report constitutes hearsay. Moreover, petitioner has been denied the opportunity to cross-examine the source of those statements, which formed an important, and perhaps the sole, basis for the department's findings of fact. Following *Cole*, we conclude that the department's conclusions are not supported by substantial evidence."

*Dinsmore*, 175 Or App at 514. The court therefore reversed and remanded the case to DMV.

## III. THE PARTIES' ARGUMENTS

DMV argues that, in its decisions in these cases, the Court of Appeals improperly has reduced the multifactored, case-and-evidence-specific *Reguero* inquiry to "one unbending and universally applicable dictate: Hearsay alone can never be substantial evidence to support any finding necessary to an agency's ultimate determination." DMV contends that *Reguero* holds that the APA "necessarily permits" hearsay evidence, without other corroborating evidence, to be sufficiently substantial to support a finding of fact. Consequently, DMV reasons that the Court of Appeals' interpretation of ORS 183.482(c) is inconsistent with this court's interpretation in *Reguero*. DMV makes further arguments respecting the separate cases at issue here—as do Cole and Dinsmore—as summarized below.

---

[14] Before the Court of Appeals, DMV argued that Dinsmore's subsequent conviction for criminally negligent homicide should preclude her from continuing to assert that she was not criminally negligent. The Court of Appeals held that,

> "in order to rely on the doctrine of issue preclusion, the department first had to introduce the judgment into evidence and provide petitioner with an opportunity to show that issue preclusion does not apply. The department did not do so, and, having failed to comply with the prerequisites for claiming issue preclusion, it may not rely on that doctrine here."

175 Or App at 513 (internal citations omitted). DMV does not raise that issue on review, and we do not address it.

## A. *Cole*

In *Cole*, DMV concedes that the Court of Appeals applied the *Reguero* factors, but argues that the conclusions that the court drew were incorrect and contrary to *Reguero*'s holding. Specifically, DMV maintains that the Court of Appeals failed to consider the reliability of the hearsay evidence, the lack of countervailing evidence presented, and the lack of efficacy of cross-examining the police officer whose report formed the basis for the hearing officer's decision.

In contrast to what DMV characterizes as the "classic hearsay" in *Reguero*, DMV asserts that the hearsay evidence offered in *Cole* contained adequate indicia of reliability and sufficient probative force to constitute substantial evidence when no countervailing evidence rebutted Gurkman's report or called into question Gurkman's credibility. DMV emphasizes that Gurkman's report detailed his personal observations of Cole's vehicle violating a variety of traffic laws and that Gurkman had prepared the report near the time of the stop, was acting within the scope of his duties imposed by law in making the report, and had a duty to report his observations accurately. DMV analogizes those factors to similar ones discussed in the legislative commentary to the recorded-recollection exception to the hearsay rule under the Oregon Evidence Code and urges that those considerations suggest that reports made in such a manner are inherently reliable. *See Laird C. Kirkpatrick, Oregon Evidence* § 803.05[2], Art VIII-89 (4th ed 2002) (discussing guaranty of trustworthiness found in inherent reliability of record made while events still fresh in mind and record intended accurately to reflect those events). DMV also argues that Gurkman's report was supported by additional guarantees of trustworthiness because he could have been subject to disciplinary action or civil or criminal liability for making a false report.

DMV next contends that Cole's failure to offer any countervailing evidence, such as an alternative account of the events reported by Gurkman, when taken in conjunction with the indicia of reliability accompanying Gurkman's report, reduces the likelihood that cross-examining

Gurkman would have been useful in this case.[15] DMV argues that, unlike in *Reguero*, in which the teacher had offered evidence that directly contradicted the hearsay statements, Cole failed to present any evidence suggesting what favorable evidence he expected to procure by cross-examining Gurkman. DMV characterizes the fact proved by the hearsay—that Cole was stopped lawfully—as an antecedent fact that it was required to prove but contends that the central issue at the hearing was whether Cole was driving under the influence.

Finally, DMV argues that the Court of Appeals did not adequately take into account considerations of economy implicated by DMV's procedure for processing the suspension of DUII drivers when the court evaluated the evidence for substantiality. DMV asserts that it holds close to 400 DUII license suspension hearings a month; that, in many of those cases, a stopping officer and an arresting officer are involved; and that the agency must issue a final order within 30 to 60 days from the date of the arrest.[16] DMV argues that those facts make it uneconomical to subpoena two officers when it has no reason to believe that both are necessary—for example, when the driver has not expressed his intent to challenge the validity of the stop or requested DMV to subpoena the officers. Moreover, DMV asserts that, if required to testify,

---

[15] DMV also contends that direct evidence lends credence to the inference that Gurkman's report contained accurate information. The agency asserts that the fact that Gurkman stopped Cole supports the inference that Gurkman thought that Cole was committing a traffic infraction, and the fact that Cole's blood alcohol level exceeded the legal limit suggests that his driving might have been affected in the manner that Gurkman described. It is beyond dispute that DMV cannot rely on the fact that the stop occurred as evidence that the stop was valid. Likewise, the fact that, *ex post*, Cole's blood alcohol level was found to be above the legal limit cannot, standing alone, be used to prove that his driving was impaired at the time of the stop. *See, e.g., State v. Clark*, 286 Or 33, 39, 593 P2d 123 (1979) (noting that some persons may exhibit no observable symptoms of intoxication and yet may have blood alcohol content exceeding legal limit).

[16] Under the Implied Consent Law, if DMV receives a police report indicating that a driver has been arrested for driving under the influence, ORS 813.120, then DMV is required to suspend the individual's driver license. ORS 813.410(1). Drivers may request a hearing within 10 days of the arrest or notice of suspension, and, in most cases, the department is required to hold the hearing and issue a final order within 30 or 60 days of the date of the arrest. ORS 813.410(3), (4)(e). According to DMV, many police departments utilize a dual-officer system such as the one in Cole's case, *i.e.*, a stopping officer and an arresting officer, to enforce drunk driving laws.

officers are unlikely to have an independent recollection of the stop and merely will be repeating the information in their reports. Thus, DMV reasons that the value of having them testify is minimal.

Cole counters that the Court of Appeals correctly applied the *Reguero* factors in holding that the police report, by itself, did not constitute substantial evidence of the validity of the stop. He notes that, contrary to DMV's assertion that whether he was stopped lawfully was not the central issue of the hearing, the hearing officer *must* determine that the driver was validly under arrest for DUII when he was asked to take the breath test for the ensuing suspension to be valid. *See Pooler v. MVD*, 306 Or 47, 51, 755 P2d 701 (1988) ("Without a valid arrest, there can be no request to take a breath test which may lead to a lawful suspension.").

In addition, Cole argues that DMV's failure to notify him that it intended to submit a report prepared by an officer of whose existence he was unaware violates due process because it deprived him of a reasonable opportunity to subpoena that officer. He contends that, if DMV fails to provide reasonable notice of its intent to offer a hearsay police report at an implied consent hearing, then either that report should be excluded from evidence or the party against whom the report is to be used should be entitled to a continuance of the hearing in order to subpoena the declarant. Cole notes that the trial court specifically found that Gurkman's name did not appear in a public record to which Cole had access and that Cole had no means available to obtain his name or a copy of his report.

In response, DMV asserts that Cole knew that more than one officer had been involved in his arrest because Gurkman was referred to in Nguyen's report, albeit incorrectly as "German," and therefore Cole could have subpoenaed Gurkman. Thus, DMV argues that Cole received all the process that he was due.[17]

---

[17] DMV also argues that, due to the way in which the implied consent statutes operate, DMV itself did not have a copy of Gurkman's report before the hearing. ORS 813.100(3) describes the procedure for suspending license after a driver fails a breath test and provides, in part:

"[T]he police officer shall do all of the following:

## B. *Dinsmore*

DMV argues that the Court of Appeals merely relied on its decision in *Cole* and mechanically applied the *Reguero* factors to the evidence in Dinsmore's case. In particular, DMV claims that the Court of Appeals did not evaluate properly whether the hearsay evidence contained in the officers' reports could have been subjected to effective cross-examination, but rather simply assumed that it could. DMV argues that the nature of the information contained in those reports would not be susceptible to meaningful cross-examination because (1) Johnson's report contained the officer's own observations and statements that Dinsmore and the two witnesses had made; and (2) Skinner's reconstruction report comprised "simple measurements and descriptions of objective information." In terms of the importance of the facts sought to be proved by the hearsay evidence, DMV concedes that the police reports formed the only evidentiary support for the hearing officer's findings of fact about the accident.

---

"* * * * *

"(d) Within a period of time required by the department by rule, report action taken under this section to the department and prepare and cause to be delivered to the department a report as described in ORS 813.120, along with the confiscated license or permit and a copy of the notice of intent to suspend."

Under ORS 813.120(1), a report required by ORS 813.100 need not state whether more than one officer was involved in the stop or whether the reporting officer was the stopping officer, although it must disclose "[w]hether the person, at the time the person was requested to submit to a test, was under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance." ORS 813.120(1)(a).

Here, Nguyen prepared the report required by ORS 813.100 and submitted it without a copy of Gurkman's report. According to DMV, Nguyen then brought Gurkman's report to Cole's hearing. DMV claims that, because it was not in possession of the report until the hearing, it gave Cole all the documents in its possession at the time that he requested them. Although such an argument might be a defense to an alleged discovery violation, it does not suffice to address whether DMV's actions violated Cole's right to due process.

DMV also claims that Cole had the right under ORS 192.420 and ORS 192.501(3) to request that the Gresham Police Department provide him with copies of all relevant reports. Cole argues that Gurkman's report was not a public record subject to disclosure under those statutes because it constituted investigatory information compiled for criminal law purposes, which is exempt under ORS 192.501(3). We do not find it necessary to decide this issue, because, as we explain below, we conclude that DMV's failure to notify Cole of Gurkman's identity and the existence of Gurkman's report constitutes a due process violation. *See* 336 Or at 588-89.

In response, Dinsmore disputes DMV's contention that the Court of Appeals applied its ruling in *Cole* as a "blanket rule" that hearsay alone never could be sufficient to support an agency's finding. She asserts that, because the court expressly found that the facts in her case were substantially similar to those in *Cole*, its application was appropriately case-specific. *See Dinsmore*, 175 Or App at 514 (finding no meaningful distinction between this case and *Cole*).

Next, Dinsmore notes that the alternative to relying on the hearsay was to require the officers to appear at the hearing and provide testimony, and she contends that, "[a]s in *Reguero*, the officers' direct testimony would have been better evidence than their hearsay statements and those of other witnesses." Dinsmore emphasizes that both officers disobeyed their DMV subpoenas and that no explanation was offered as to why they did not appear. Dinsmore contends that their failure to honor the subpoenas casts doubt on the reliability of the statements made in their reports and that reliance on those reports was therefore not reasonable. Relatedly, Dinsmore claims that she was depending on the officers to honor their subpoenas and was prepared to cross-examine them, and asserts that it was reasonable for her to rely on DMV's subpoenas rather than request the agency to subpoena the officers on her behalf.

As to the state of the opposing and supporting hearsay evidence, Dinsmore contrasts DMV's lack of corroborating evidence with the considerable amount of countervailing evidence that she offered and on which the hearing officer relied in part. As to economy concerns, Dinsmore asserts that the convenient and inexpensive alternative *had* been implemented in her case because DMV had subpoenaed the officers. She also contends that allowing the hearing officer to rely on the multiple hearsay statements contained in the reports, which "lacked any showing of expertise or qualification, specific and accepted engineering principles, or * * * foundation," similarly violated notions of due process.

As to the efficacy of cross-examination, Dinsmore argues that being able to cross-examine the accident reconstructionist would have yielded important information regarding Skinner's training, experience, and expertise in

reconstructing accidents (none of which DMV offered), and could have revealed errors in the models that he used to generate his findings.

Finally, in regard to the importance of the outcome of the proceedings, Dinsmore alleges that, because she lives in Burns and lacks transportation alternatives, the consequences for her of a driver license suspension are dire.

## IV.  DISCUSSION

■    We consider the parties' subconstitutional arguments first. *State v. Hancock*, 317 Or 5, 9, 854 P2d 926 (1993). Before doing so, we briefly review the applicable standards of review and burdens of proof under the APA and restate the *Reguero* factors. As mentioned above, in cases such as these that challenge an order issued by an administrative agency after a contested case hearing, if we conclude that the order is not supported by substantial evidence in the whole record, then we must "set aside or remand the order." ORS 183.482(8)(c). "Whole record" review requires us to consider whatever evidence the record may contain that would detract from, as well as support, the agency's order. *Norden v. Water Resources Dept.*, 329 Or 641, 647-48, 996 P2d 958 (2000) (citing *Younger*, 305 Or at 354 (1988) (quoting *Universal Camera Corp. v. NLRB*, 340 US 474, 488, 71 S Ct 456, 95 L Ed 456 (1951))). Under the APA, only evidence that is irrelevant, immaterial, or unduly repetitious is excluded; all other evidence that a reasonably prudent person would rely on is admissible. ORS 183.450(1); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990).

In contested case hearings, the proponent of a fact or position bears the burden of presenting evidence to support that fact or position. ORS 183.450(2). *See also Reguero*, 312 Or at 418 (agency bore burden of proving sexual misconduct allegation); *Rencken v. Young*, 300 Or 352, 364-65, 711 P2d 954 (1985) (proponents of water right cancellation bore burden to prove requisite nonuse of water). Thus, in these cases, DMV had the burden of presenting reliable, probative, and substantial evidence to support its allegations that Cole was lawfully stopped and arrested for DUII and that Dinsmore

had operated her vehicle either recklessly or with criminal negligence. *See* ORS 183.450(5).

■      As previously discussed, *Reguero* provides a list of factors that courts may consider when assessing whether hearsay evidence constitutes substantial evidence: (1) the alternative to relying on the hearsay evidence; (2) the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; (3) the state of the supporting or opposing evidence, if any; (4) the degree of lack of efficacy of cross-examination with respect to the particular hearsay statements; and (5) the consequences of the decision either way. We conclude that the last *Reguero* factor can be dispensed with at the outset, because the consequences of DMV's decision is the same in both cases. Although it is clear that a driver has an interest in maintaining a valid driver license, it is equally apparent that DMV has an interest in removing unsafe drivers from the roads. We therefore find that that factor does not strongly favor either party in either case.

## A.   *Cole*

■      We begin our analysis of Cole's proceeding by considering each of the *Reguero* factors to determine whether substantial evidence existed to support DMV's order suspending his license. More specifically, we examine whether the hearsay evidence upon which the agency relied to determine that Cole was lawfully stopped—that is, Gurkman's report—constituted substantial evidence to support that finding by DMV.[18] The first factor is whether there are alternatives to relying on the hearsay evidence. Here, DMV could have compelled Gurkman to attend the hearing, which demonstrates that a viable alternative existed to DMV's decision to rely instead on Gurkman's report.

---

[18] We have organized our discussion based on the factors enumerated in *Reguero* for the sake of clarity, not because those factors are intended to be treated as a checklist. As we discuss in further detail below, other considerations may, and at times should, be taken into account when evaluating whether hearsay evidence in a particular case constitutes substantial evidence sufficient to support an agency's order. Moreover, depending on the circumstances of a particular case—for example, the nature of the hearsay evidence and the issue it is being used to prove—the importance accorded to an individual *Reguero* factor in the overall determination may vary.

Next, we evaluate the potential efficacy of cross-examining the preparer of the hearsay report. We conclude that the record does not support the state's contention that the cross-examination of Gurkman would have been without effect. Nguyen, who testified at Cole's hearing, appeared to have an independent recollection of the event; the same could have been true for Gurkman, and we have no reason to presume otherwise.

However, the next *Reguero* factor that we consider, the state of the corroborating and opposing evidence, supports the conclusion that it was reasonable for DMV to rely on this particular hearsay evidence to find that Cole had been stopped lawfully. At Cole's hearing, DMV did not offer any evidence that corroborated the statement in Gurkman's report that Cole had violated several traffic laws before the stop, and Cole declined to submit any contradictory evidence. Therefore, the only evidence as to whether Cole had been stopped lawfully was Gurkman's report. Because DMV bore the burden of presenting evidence to prove its position that Cole's stop had been lawful, Cole was not obliged to offer an affirmative defense. However, his failure to do so tends to make it more reasonable for the agency to have relied on Gurkman's report in making its findings. *See* ORS 183.482(8)(c) (substantial evidence exists to support finding of fact when whole record would permit reasonable person to make that finding). As this court stated in *Reguero*, the reliability of particular evidence depends upon "the quantity and quality of supporting and opposing evidence and on the whole circumstantial setting[.]" 312 Or at 419-20 (quoting 3 Davis, *Administrative Law Treatise* 245 (2d ed 1980)). Here, the hearsay evidence was a police report prepared in the ordinary course of business and pursuant to the officer's official duties, and no evidence was offered that challenged the veracity of the information contained in that report. Thus, although the Court of Appeals correctly assessed that the state of the evidence was "neutral" in the sense that neither party offered additional evidence, 172 Or App at 140, Cole's failure to question Gurkman's account of the incident or offer any explanation that countered Gurkman's description of Cole's driving before Gurkman had stopped him[19] tends to

---

[19] In addition to the objections made to the hearsay evidence, Cole's entire defense consisted of his counsel's suggestion, while cross-examining Nguyen, that

support a determination that the report's account of the events was reliable.

Finally, we consider the importance of the facts sought to be proved by the hearsay statements and considerations of economy. This court's decision in *Pooler* directly refutes DMV's contention that the fact to be proved by the hearsay evidence in Cole's case was anything less than integral to the outcome of the proceeding. In *Pooler*, this court held that a hearing officer at a license suspension hearing for a driver arrested for DUII must determine whether the driver lawfully was under arrest for DUII when asked to take a breath test under *former* ORS 482.541(2), *renumbered as* ORS 813.410 (1985). 306 Or at 51. If the hearing officer fails to make that determination, then the suspension could be invalid. *Id.*

However, we find that the considerations of economy that DMV raises loom large here. DMV is responsible for holding hundreds of DUII hearings monthly and, by statute, must issue orders on strict time lines. *See* 336 Or at 580-81. We agree with DMV that, in general, when a party fails to exercise its right to request the agency to subpoena witnesses on its behalf, the agency is not obligated to procure the attendance of those witnesses and may submit reports that they have prepared. As we discuss below, however, Cole lacked such an opportunity, because he was unaware of Gurkman's identity before his hearing. Although that fact is significant, we determine that it pertains to whether Cole's hearing complied with due process, rather than to the question whether the evidence on which DMV relied to suspend Cole's license satisfied the statutory substantial evidence requirement.

We conclude that the hearsay evidence in this case was sufficiently reliable and probative for the agency to employ it as a basis for its findings of fact. In light of the above analysis, it constituted substantial evidence to support the hearing officer's finding that Cole lawfully had been stopped and arrested for DUII, on which DMV predicated its order suspending Cole's license.

---

Cole's alleged swerving might have been due to his effort to avoid a disabled vehicle in the roadway and his counsel's assertion that "we most strenuously dispute any allegations that there [were] any traffic infractions or other driving committed by [Cole] that would've given rise to the stop."

Having concluded that no state statutory violation occurred, we now address whether DMV violated Cole's due process rights when it failed to give him the name of the stopping officer or a copy of the report prepared by that officer and then introduced that report at Cole's hearing. A driver license suspension hearing must satisfy the requirements of the due process clause of the Fourteenth Amendment.[20] *See, e.g., Dixon v. Love,* 431 US 105, 112, 97 S Ct 1723, 52 L Ed 2d 172 (1977) ("It is clear that the Due Process Clause [of the Fourteenth Amendment to the United States Constitution] applies to the deprivation of a driver's license by the State[.]"). Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner.[21] *Mathews v. Eldridge,* 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) (internal quotation marks omitted). In addition, when important governmental decisions are based on determinations of fact, due process usually requires an opportunity to confront and cross-examine adverse witnesses. *Goldberg v. Kelly,* 397 US 254, 269, 90 S Ct 1011, 25 L Ed 2d 287 (1970).

In Cole's case, we conclude that, although the hearsay evidence offered was sufficiently reliable to constitute substantial evidence for purposes of ORS 183.482(8)(c), Cole's hearing did not comport with the fundamental requirements of due process. That is so, because, despite having received Cole's discovery request, DMV did not provide Cole with Gurkman's name or a copy of Gurkman's report, but then offered that report at Cole's hearing.

We agree with Cole that that lack of notice distinguishes his case from *Richardson v. Perales,* 402 US 389, 91 S Ct 1420, 28 L Ed 2d 842 (1971), in which the Supreme Court held that

"a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical

---

[20] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]"

[21] This court previously has held that the Implied Consent Law at issue in Cole's case satisfies due process, because the law provides for an administrative hearing subject to judicial review. *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 463, 450 P2d 533 (1969). The same is true of the procedures under which DMV suspended Dinsmore's license.

findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician."

402 US at 402. In reaching that conclusion, the Court emphasized that the claimant, Perales, had had ample opportunity to examine the physicians' reports before the hearing because those reports were "on file and available for inspection by the claimant and his counsel" and "the authors of those reports were known and were subject to subpoena and to the very cross-examination that the claimant asserts he has not enjoyed." *Id.* at 407. The Court also found it significant that Perales had failed to take advantage of the opportunity afforded to him under the Social Security Act to request subpoenas for the physicians and that such inaction on his part precluded him from "now complaining that he was denied the rights of confrontation and cross-examination." *Id.* at 404.

As in *Perales*, Cole failed to take advantage of his statutory opportunity to subpoena Gurkman. *See* ORS 183.440 (permitting parties to request DMV to subpoena witnesses for hearing). However, because he did not know Gurkman's identity at the time of the hearing, Cole lacked a meaningful opportunity to subpoena Gurkman and secure his attendance. Moreover, unlike the reports in *Perales*, Gurkman's report was neither on file nor available for inspection before the hearing. Thus, we hold that, under those circumstances, Cole's due process rights were violated and he is entitled to a new hearing.

B. *Dinsmore*

■      Before her hearing, Dinsmore knew the identity of the officers who prepared the reports that DMV offered into evidence.[22] However, we must determine whether those

---

[22] Unlike the notice that Cole received regarding his rights and the procedures that would be followed at his hearing, the notice that Dinsmore received from DMV did not state that she had a right to request the agency to subpoena witnesses on her behalf, but merely referred to her right to a hearing under the APA. Although

reports were sufficiently reliable and probative to constitute substantial evidence. We do so by considering the *Reguero* factors.

In Dinsmore's case, the alternative to relying on the hearsay evidence was to have Johnson and Skinner testify at Dinsmore's hearing, and we find that that would have been better evidence than relying on their reports alone. As in *Cole*, the facts that DMV sought to prove by the reports were essential to the outcome of Dinsmore's hearing, because DMV offered no nonhearsay evidence to corroborate what was in the officers' reports. In contrast to *Cole*, however, Dinsmore offered significant evidence contradicting the content of Skinner's report, as we described above. *See* 336 Or at 577. Moreover, the fact that DMV already had subpoenaed Johnson and Skinner bolsters Dinsmore's contention that having them present at the hearing satisfied economy concerns. We therefore conclude that the *Reguero* factors regarding the state of the evidence and the alternative to the use of hearsay weigh in Dinsmore's favor.

We also find that the fourth *Reguero* factor— whether Dinsmore could have cross-examined the officers effectively about their reports—similarly favors Dinsmore, particularly with regard to Skinner's accident reconstructionist report. In contrast to Johnson's report, which consisted mainly of a description of his actions after he arrived at the scene of the accident, Skinner's report set out his conclusions based on reviewing reports prepared by others, examining the collision scene several days after the accident, and viewing the damaged vehicles. In other words, Skinner offered his opinion based in part on hearsay and multiple

notice of the right to subpoena is not required expressly by ORS 183.413, which details what information an agency must provide to a party to a contested case before the hearing, we note that the sample "Notice of Contested Case Rights and Procedures" provided by the Attorney General includes a statement that "the agency will issue subpoenas for witnesses on [the party's] behalf upon a showing that [the witnesses'] testimony is relevant to the case and is reasonably needed * * * to establish [the party's] position." *Oregon Attorney General's Administrative Law Manual and Uniform and Model Rules of Procedure*, p A-37 (2001). In addition, the Attorney General directs agencies to be as "specific and informative as possible" in the statement of rights sent to parties in contested cases to "comply with the spirit of ORS 183.413." *Id.* at 90.

hearsay (that is, the statements made by Dinsmore and witnesses that were included in Johnson's report), a practice that this court found problematic in *Reguero*. 312 Or at 419-20. In addition, in objecting to Skinner's report, Dinsmore specifically challenged the model that Skinner had used to develop his conclusions. Although unable to question him directly, Dinsmore contested how Skinner had determined that she would have had the equivalent of a distance of six football fields in which to see the stopped vehicles ahead of her and react appropriately, a distance upon which the hearing officer relied to determine that the collision had been caused by Dinsmore's recklessness or criminal negligence.

Moreover, unlike Johnson's police report, which had been based on his personal knowledge and observations as he investigated the accident, Skinner's accident reconstruction report lacked sufficient foundation to support all his conclusions. For example, in evaluating Dinsmore's impairment, Skinner stated that she had been "using her cell phone at the time of the crash" without identifying what source led him to that conclusion. As discussed above, Dinsmore refuted that conclusion at the hearing by introducing her cell phone records. Dinsmore also argued that Skinner was unqualified to offer any opinion as to what her blood alcohol content at the time of the accident might have been because he had not been shown to have any expertise in that area. In addition, she alleged that Skinner's conclusion about her blood alcohol level at the time of the accident lacked proper foundation because the only evidence on that point consisted of the results of a later breath test that was not itself offered into evidence and that had not been shown to have been administered properly. We conclude that it is likely that Dinsmore would have been able to question Skinner effectively as to the content of his report.

When, as here, critical evidence is in the form of a hearsay report that is prepared by an expert witness who does not testify and that is based partially on hearsay and multiple hearsay, and when significant questions have been raised as to the methods used to prepare that evidence, we are not satisfied that a reasonable person could rely on the report to support a conclusion that a driver has been either reckless or criminally negligent. We therefore hold that the

reports that DMV offered at Dinsmore's hearing did not constitute substantial evidence under ORS 183.482(8)(c) to support the hearing officer's finding of criminal negligence or recklessness, which formed the basis for the agency's decision to continue to suspend Dinsmore's license.

## V.  CONCLUSION

For the reasons stated above, we conclude that the order suspending Cole's license must be reversed because the proceedings that preceded that order violated Cole's due process rights. Thus, Cole is entitled to a new hearing. We conclude that the order suspending Dinsmore's license must be reversed because it was not supported by substantial evidence. We remand to DMV to dismiss Dinsmore's proceeding.

In *Cole*, the decision of the Court of Appeals and the judgment of the circuit court are affirmed, and the case is remanded to DMV. In *Dinsmore*, the decision of the Court of Appeals is affirmed, the order of the DMV is reversed, and the case is remanded to DMV.