Argued and submitted May 14, affirmed August 25, 1993

Philip PINTO,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Keystone Contracting, Inc.,
an Oregon corporation,
*Respondents.*

(92-AB-1057-A; CA A76336)

858 P2d 177

Norman D. Malbin, Portland, argued the cause and filed the brief for petitioner.

Michael D. Reynolds, Assistant Solicitor General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Keystone Contracting, Inc.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Claimant seeks review of an Employment Appeals Board (EAB) order denying his claim for unemployment benefits. We affirm.

Claimant is a sheet metal worker with 23 years of union experience. In November 1991, he was dispatched to work for Keystone Contracting, Inc., where he installed exterior siding on a mill in Camas, Washington. The mill was between 60 and 70 feet tall, and the panels of siding weighed up to 200 pounds.

On November 20, 1991, employer suggested a "timber hitch" method for raising and lowering the siding. The workers rejected that suggestion, and decided instead to clamp a pair of vise grips to each panel, and hoist it by a rope tied to the vise grips. That day, a panel of siding suspended from a pair of vise grips fell, narrowly missing some workers. After that, vise grips were no longer used to handle the siding. Instead, a pulley device called a well wheel was used to raise and lower the panels.

Claimant was concerned that the well wheel method was not proper for the job. He testified that he explained to the foreman that the well wheel would be fine at lower levels and for panels weighing up to 100 pounds, "but later on we're gonna need something mechanical." He testified that he requested a winch.

On December 11, 1991, employer called a meeting. Claimant testified that, at that meeting, employer's corporate president told the workers that, beginning the next day, a rope tugger would be used to handle the siding. Claimant describes a rope tugger as "an electric winch with a drum that turns. The lifting cable is wrapped around the drum, which provides the power to lift."

Claimant remained dissatisfied. He testified that the proper equipment for the job would have been a winch equipped with a brake, which the rope tugger lacked, or a "manlift." After the December 11 meeting, he quit the job because he felt that the equipment was improper, and that the working conditions were still unsafe. However, he did not express his concerns or suggestions to employer.

The Employment Division granted claimant's application for unemployment benefits. Employer requested a hearing, and the referee affirmed. Employer petitioned for review by EAB. EAB made a number of supplemental findings of fact, including that:

"(14) The employer supplied whatever equipment the journeymen requested to perform the job. * * * (16) The employer was willing to supply, upon the workers' request, any equipment necessary to perform the work safely.

"* * * (18) Pursuant to a complaint by one of the sheet metal workers, a state agency conducted a safety inspection at the site on November 21, 1991. (19) No safety violations were found. (20) An inspection conducted January 15, 1992, [after claimant had left work,] concluded that employer did not have an adequate fall protection plan, did not provide supervision by a competent person and used a damaged tugger rope."

EAB concluded:

"The record fails to establish that defective or unsafe equipment was in use during the term of claimant's employment. We conclude that the workplace was not unsafe. If claimant had ideas of how to improve safety, he could have communicated them to employer. We are persuaded that employer was willing to make accommodations. We conclude that claimant failed to establish that he faced a situation so grave that he had no reasonable alternative but to quit work."

EAB reversed the referee's decision and denied benefits.

■    An employee is disqualified from receiving unemployment benefits if the employee voluntarily leaves work without good cause. ORS 657.176(2)(c). Good cause for leaving work is

"such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. * * * [T]he reason must be of such gravity that the individual has no reasonable alternative but to leave work." OAR 471-30-038(4).

In determining whether a claimant had good cause to leave work, consideration also must be given to the factors enumerated in ORS 657.190. *Ruiz v. Employment Division*, 83 Or App 609, 613, 733 P2d 51 (1987). Those factors include "the

degree of risk involved to the health [and] safety * * * of the individual." ORS 657.190.

■ Claimant argues that EAB erred in concluding that he voluntarily left work without good cause, because his safety concerns constituted good cause. Well grounded safety concerns certainly justify leaving work, provided there is no reasonable alternative. *Bremer v. Employment Division*, 52 Or App 293, 628 P2d 426 (1981).

■■ Claimant contends that EAB improperly allocated to claimant, rather than to employer, the burden of providing a safe work site. By statute, it is the employer's duty to insure that safe equipment is used, and that safe conditions prevail, at a site where there is a risk of harm to the employees or the public. ORS 654.305. Nonetheless, to avoid disqualification from unemployment benefits, an employee must prove that there were no reasonable alternatives to leaving work, or that a discussion of alternatives with the employer would be futile. *Bremer v. Employment Division, supra*, 52 Or App at 297-98.

■ EAB found that, on November 21, 1991, a Washington State agency conducted an inspection and found no safety violations at the Camas mill site. That finding is supported by substantial evidence. EAB's conclusion that the workplace was safe is supported by that finding, because the types of equipment and practices in use at the time of that inspection were the same ones in use at the time claimant left work.

Even assuming, however, that claimant's safety concerns were well grounded, EAB found that employer would have accommodated workers' safety suggestions. That finding is also supported by substantial evidence: At the December 11 meeting, employer announced its accommodation of claimant's suggestion that a winch should be used to install siding at higher levels. Claimant left work after that meeting, because he believed that the proper equipment for the job was either a winch equipped with a brake, or a "manlift." EAB could conclude that claimant had a reasonable alternative to leaving work in that he could have communicated those suggestions to employer.

We cannot say that EAB erred in holding that claimant voluntarily left work without good cause. We have considered claimant's other arguments, and find them lacking in merit.

Affirmed.