Argued and submitted October 24, 1996, affirmed April 30, 1997

Desiree COFFEY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Wild River Pizza Co.,
*Respondents.*

(95-AB-2425; CA A91402)

938 P2d 805

Paul Pierson argued the cause and filed the brief for petitioner.

Philip L. Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

No appearance for respondent Wild River Pizza Co.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Claimant seeks review of an order[1] of the Employment Appeals Board (EAB) that reversed the referee and denied unemployment benefits on the ground that claimant quit work without good cause. ORS 657.176(2)(c). We affirm.

EAB made several modifications to the referee's findings and found:

"(1)   Claimant worked for employer from January 1, 1989 until she quit effective May 25, 1995. (2) Claimant quit because the job tasks were no longer appropriate for her physical condition. (3) Claimant's job duties included working the front counter, cutting pizza, cash register and kitchen duties, such as working the fry room, rolling and cutting pizza and bussing tables. (4) As a supervisory personnel claimant had the option of assigning these duties to others; however, the restaurant would often times be busy or short staffed and claimant often performed different tasks to make the operation run smoothly.

"(5)   In November 1994 claimant noticed she had pain in her right hand and wrist. (6) She would take aspirin to attempt control the pain. (7) As this condition worsened, claimant began to have muscle spasms in her hand and arm. (8) Claimant would sometimes have to stop what she was doing and pack her hand in ice, employer observed this. (9) In November 1994 claimant mentioned this condition to her supervisor and nothing was done at that time to alleviate claimant's condition. (10) Finally, in an effort to assist claimant get better, employer cut her hours in half and transferred claimant to night shift. Because her hours were cut, claimant lost her health insurance coverage.

"(11)   On night shift claimant would have more crew members working under her. Night shift requires less lifting and less prep work; however, [it] is a busier shift because more customers come to dine at night. (12) Even with the reduced work load claimant's condition still caused her pain. (13) At the beginning of May 1995, claimant saw her doctor about her hand and wrist. (14) Claimant was

---

[1] On its own motion, EAB set aside its original order after claimant filed her petition for review with this court. After reconsideration, EAB modified its original order and again denied benefits. Throughout this opinion, we refer only to the findings and conclusions as modified after EAB's reconsideration.

diagnosed as having mild chronic tendinitis and repetitive movement injury. (15) Claimant's doctor removed claimant from any work starting May 3, 1995. (16) During follow-up visits the doctor noticed slight improvement in claimant's condition; however, [he] did recommend to claimant that she seek other work that did not require repetitive movements of her right arm and hand. (17) As of May 24, 1995 claimant's doctor released claimant to return to light duty work that did not require repetitive tasks, such as pizza making or lifting.

"(18)   Employer had been working with their workers' compensation carrier and claimant's doctor to develop a light duty position that might fit within claimant's needs. (19) Claimant was still experiencing pain and did not feel medically ready to return to this position, even with employer's promise of light duty tasks. (20) Claimant submitted her resignation effective May 25, 1995. (21) Even though claimant had been off work since May 3, she continued to experience pain, some numbness and tingling in her hands and did not feel she could adequately perform even modified tasks for this employer at that time. (22) Claimant believed that the employer would expect her to perform work outside her light duty restrictions in her capacity as a night shift supervisor. (23) Claimant believed that two other employees, who were assigned to light duty work, often exceeded their light duty restrictions because there was so much work to be performed. (25) Claimant's doctor approved jobs such as cashiering or cleaning tables as appropriate light duty work for claimant. (26) Claimant's doctor strongly recommended that claimant look for other work that would not involve duties which required repetitive movement of her right hand or arm. (27) As supervisor of a shift, claimant could have determined which duties she performed and which she did not."

EAB then concluded that claimant had failed to prove that she quit work for good cause. ORS 657.176(2)(c).

Claimant raises multiple assignments of error. We begin with those assignments that concern EAB's findings of fact, which we examine to determine whether they are supported by substantial evidence. ORS 183.482(8)(c). We conclude that they are and briefly discuss only some of claimant's arguments.

■ ■    Claimant argues that EAB erred in finding that employer worked with her doctor because that finding is supported only by hearsay testimony of a witness who did not talk directly to the doctor. However, hearsay is not only admissible in an administrative hearing but may constitute substantial evidence. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417, 822 P2d 1171 (1991). In addition, EAB's finding is supported by the doctor's examination notes, which explain that he had told employer that claimant could return to some light duty such as a cashier-type job. Consequently, there is substantial evidence to support EAB's finding that employer worked with claimant's doctor.

■    Claimant also contends that EAB lacked substantial evidence to support those findings that concluded that claimant only "believed" she could not perform light-duty work and that, as a supervisor, she could have determined which duties she performed. She insists that compelling evidence supports the ALJ's findings that, due to busy times and staff shortages, claimant would have had to perform work outside her light-duty restrictions. As support, she points to her own knowledge of the restaurant after over six years of working for employer and her observations of two former supervisors, Candice McCombs and Marlene Olive, who exceeded their light-duty restrictions.

We disagree that the evidence was as one sided as claimant insists. Two supervisors called by employer, Karen Andreason and Robert Young, testified that when they suffered from back problems employer had accommodated their work restrictions and other employees filled in for them. Further, Olive testified that other employees could be trained to cover for an employee on light duty. The testimony of those witnesses supports the finding that claimant could have delegated work exceeding her medical restrictions. Olive also agreed that, although a new untrained employee could have performed light duty, a responsible experienced employee would fill in as needed. That suggests that exceeding work restrictions was not a practical necessity as claimant urges. Consequently, there is substantial evidence to support EAB's findings.

■　　　　Next, we determine whether there is a rational relationship between EAB's findings and its legal conclusions. *Crane v. Employment Div.*, 118 Or App 392, 395, 847 P2d 886 (1993). Although we may disagree with EAB, we will not overturn its conclusions "so long as the reasoning is not fallacious." *Id.* (quoting *Erne v. Employment Div.*, 109 Or App 629, 633, 820 P2d 875 (1990)).

■　　　　To qualify for unemployment benefits, claimant must prove that she quit for good cause. ORS 657.176(2)(c). OAR 471-30-038(4) defines good cause for voluntarily quitting work as being

> "such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. For an individual with a permanent or long-term 'physical or mental impairment' (as defined at 29 CFR §1630.2(h)) good cause for voluntarily leaving work is such that a reasonable and prudent person with the characteristics and qualities of such individual, would leave work. For all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

EAB determined that claimant's regular work posed a grave situation for her. However, it was not persuaded that the prospect of light duty also presented claimant with a grave situation. Although claimant believed that Olive and McCombs had exceeded their work restrictions, EAB nevertheless concluded that there was no evidence that employer either required or was aware of those instances where they went beyond their restrictions. Instead, EAB concluded that those employees had done that work with a conscientious desire to get the work done and that claimant had no reasonable basis to assume that employer would require her to work beyond her medical limit.

EAB also stated:

> "To the contrary, the employer demonstrated a desire to work with claimant, reducing her schedule and working directly with her doctor and the employer's workers' compensation insurer to design a light duty plan or assignment that would allow claimant to continue working, within their

light duty restrictions. We are persuaded that a reasonable and prudent person would at least attempt to continue working in a light duty position, especially if the position was, as in this case, apparently approved by that individual's doctor. Claimant would have had the authority and the reasonable alternative of at least trying to perform the light duty work and assigning duties which exceeded her light duty restrictions to other employees, even during busy periods."

Claimant contends that because the referee concluded that "[c]laimant presented credible and persuasive evidence * * * that she acted reasonably," the referee also determined that claimant's statement that she felt she was in too much pain to perform even modified duty was also credible. Consequently, according to claimant, because EAB failed to expressly explain why claimant was not credible, EAB necessarily accepted the referee's credibility determination and is somehow locked into the conclusion that claimant could not physically do the work.

ORS 657.275(2)[2] requires EAB to explain why it disagrees with a referee's explicit credibility determination. Here, even assuming that the referee's conclusion amounted to an explicit credibility determination, that statute does not apply because EAB did not disagree with the referee's credibility determination. Instead, EAB accepted, without modification, the referee's findings that claimant felt she was in too much pain to work.[3] EAB simply concluded, as it was entitled to do, that it was persuaded by the doctor's contrary opinion. That conclusion goes to the weight of the evidence, not to claimant's credibility.

Claimant next argues that EAB erred in focusing on the fact that employer did not require work outside of her

---

[2] ORS 657.275(2) provides, in pertinent part:

"Where there is evidence in the record both to make more probable and less probable the existence of any basic fact or inference, the Employment Appeals Board need not explain its decision to believe or rely on such evidence unless the referee has made an explicit credibility determination regarding the source of such facts or evidence. The Employment Appeals Board is not required to give any weight to implied credibility findings."

[3] See findings of fact numbers 19 and 21 quoted above.

medical restrictions. Further, she contends that the fact that employer worked with its insurer and claimant's doctor should not have been considered.[4] Instead, claimant insists that EAB should have considered whether a reasonable and prudent person with a painful condition should have continued working under a light-duty schedule that she knew nothing about[5] in a situation where light duty had not existed during her six-year tenure. Claimant insists that if she had continued to work, "she would not only have posed a serious risk to her own health, but would likely have been forced to stand by helplessly while pizzas piled up and chicken dinners burned in the fryer."

Claimant's argument focuses not on her ability to do light-duty work but on her ability to do the job she expected of herself. EAB's findings regarding employer working with its insurer and claimant's doctor relates to EAB's conclusion that claimant had an alternative to quitting. The fact that former employees chose to take on duties outside of their medical restrictions bears on the reasonableness of claimant's expectations that light duty was beyond her own medical restrictions and that employer would not make accommodations for her medical condition. In the light of its finding that claimant could have delegated tasks beyond her medical restrictions, EAB concluded that those expectations were not reasonable. That conclusion bears a rational relationship to its findings.

Lastly, claimant contends that EAB incorrectly applied the good cause standard by failing to consider the "suitable work factors" of ORS 657.190. We have previously stated that EAB is not required to address suitability as part of its good cause determination, *Hunt v. Employment Dept.*,

---

[4] Claimant also insists there was no evidence to support EAB's conclusion that claimant's doctor "approved" the light-duty position. We agree that concluding that the doctor "approved" claimant's "position" is a far stretch of the evidence. However, we do not need to address whether EAB erred in reaching that conclusion because it was not critical to EAB's decision.

[5] Employer did not discuss the light-duty position with claimant because employer did not have her phone number and, when she quit, she did not talk to employer but, instead, left a short note.

139 Or App 440, 912 P2d 425 (1996), and we need not address that issue further.[6]

Affirmed.

---

[6] Claimant also argues that EAB failed to consider her as a person with a long-term disability as required under OAR 471-30-038(4). However, if EAB erred in its initial order, that error was corrected in the modified order.