Argued and submitted December 22, 1999, affirmed November 8, 2000

## Debra L. YOUNG,
*Petitioner,*

*v.*

## EMPLOYMENT DEPARTMENT
and Albertson's, Inc.,
*Respondents.*

(99-AB-0173, 99-AB-0345; CA A105512)

13 P3d 1027

Max Rae argued the cause and filed the brief for petitioner.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

Adam S. Collier argued the cause for respondent Albertson's Inc. With him on the brief were Francis T. Barnwell and Bullard, Jorshoj, Smith & Jernstedt.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Claimant seeks review of an Employment Appeals Board (EAB) decision that denied her unemployment insurance benefits on the ground that she failed to demonstrate that she faced a grave situation and that she had no reasonable alternative to leaving work. We affirm.

EAB made these findings of fact:[1]

"(1) Claimant worked for Albertson's Inc., as a checker and front-end manager, from July 22, 1995, to September 14, 1998. (2) In August, 1997, claimant suffered an on-the-job injury. (3) Between that time and March, 1998, claimant worked periodically and was periodically away from work on medical leave. (4) In November 1997, the employer's insurer denied claimant's worker[s'] compensation claim. (5) The employer did not provide claimant with light-duty work after that time.

"(6) Claimant was released for and returned to unrestricted work, on March 2, 1998. (7) On March 8, she again suffered an injury; checking duties aggravated bursitis or tendonitis in claimant's right shoulder. (8) On March 11, she informed her store manager that she could no longer perform her work, unless she underwent surgery. (9) Claimant was hoping to avoid surgery.

"(10) Claimant did not perform services again for the employer after March 8, 1998. (11) The employer extended her medical leave through September 14, 1998, and paid claimant bonuses due to the front-end manager through that time.

"(12) On August 31, 1998, claimant met with the employer in an attempt to settle the Bureau of Labor and Industries (BOLI) and workers' compensation claims that claimant had filed against the employer. (13) The parties came to an agreement for the settlement of those claims. (14) The terms of that agreement included a $30,000 payment to claimant and the termination of claimant's employment. (15) Claimant agreed to settle her claims because she did not want to go through the difficulties and stress of pursuing those claims against the employer.

---

[1] Any additional facts included in this opinion are drawn from the record.

"(16) The parties did not execute the agreement until October 23, 1998. (17) On September 14, however, based on the existence of the agreed upon terms of the settlement, the employer processed claimant's termination and ceased to pay her bonuses after that date. (18) Had claimant not agreed to settle her claims against the employer, at the August conference, she could have continued her employment relationship with the employer. (19) Claimant had surgery in June and was in the process of recovery in August and September.

"(20) Between March, 1998, and the end of claimant's employment, the employer had two bookkeeping positions become available. (21) Had claimant applied for those positions, the employer would have considered transferring her into one of those jobs. (22) Claimant did not consider applying for other work with Albertson's that would meet her work restrictions."

EAB concluded that claimant voluntarily quit work and that she did so without good cause.[2] Specifically, EAB was not persuaded that claimant faced a grave situation and had no reasonable alternative to leaving work. On review, claimant argues that she had good cause to resign from her employment and that none of the three alternatives EAB identified was reasonable.

■ We review EAB's order to determine whether substantial evidence supports the findings of fact, ORS 183.482(8)(c), and to determine whether EAB's reasoning provides a rational relationship between the facts and its conclusions. *Crane v. Employment Div.*, 118 Or App 392, 395, 847 P2d 886 (1993). Claimant does not contest that she left employment voluntarily. The issue before us is whether

---

[2] ORS 657.176(2)(c) provides that an individual will be disqualified from unemployment benefits if it is determined that the individual voluntarily left work without good cause. OAR 471-030-0038(4) provides that "good cause" for voluntarily leaving work is

"such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. For an individual with a permanent or long-term 'physical or mental impairment' (as defined at 29 CFR §1630.2(h)) good cause for leaving work is such that a reasonable and prudent person with the characteristics and qualities of such individual, would leave work. For all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

claimant established that she had good cause to end her employment.

■ ■ A claimant for unemployment benefits carries the burden of proving good cause by a preponderance of the evidence. *Wilton v. Employment Div.*, 26 Or App 549, 551, 553 P2d 1071 (1976). EAB found, *inter alia*, that "claimant has not shown that it would not have been reasonable to remain on leave and continue to pursue a return to regular job duties with the employer[.]" Essentially, EAB concluded that claimant failed to carry her burden of proving good cause. We agree.

Claimant failed to prove that she would be physically unable to return to her employment within a reasonable period of time. Claimant informed her supervisor that the purpose of going on medical leave was to have surgery so that she could return to her former duties. Those duties required her to be able to lift 50 pounds. Claimant's surgery was in June 1998, and she did not contact her supervisor after that time. The supervisor believed that claimant would return to employment once she recovered from surgery. Furthermore, claimant's physician released her for administrative work on September 21, 1998. Based on the record, EAB reasonably ascertained that claimant's recovery would progress within a reasonable time frame and that claimant would fully recover from surgery. There was no evidence in the record to the contrary. If there was evidence that claimant would require a prolonged recovery from her surgery or that her surgery had been unsuccessful and that she would never be able to return to duties that required her to be able to lift 50 pounds, claimant should have submitted that evidence to EAB.[3] She did not submit such evidence.

Claimant also failed to prove that there was no position for her to return to. Although claimant's position as

---

[3] OAR 471-030-0025 addresses the responsibilities of a claimant requesting unemployment benefits. That provision provides, in part:

"With all claims, an individual shall furnish the Director with their social security number and other information required for processing their claim. Such information may include, but is not limited to, * * * working restrictions, and working ability. With respect to work activity * * * the information required may include * * * any other factors material to a determination of eligibility for benefits."

front-end manager/cashier had been filled due to her extended absence,[4] her supervisor testified that, on claimant's return, he would have placed claimant in a full-time cashier position at the same rate of pay she was receiving when she went on medical leave. Claimant could have pursued a return to regular job duties with employer.

Last, claimant failed to prove that remaining on medical leave was not a reasonable alternative to receiving unemployment benefits. Claimant was not on a protracted unpaid leave of absence. *Taylor v. Employment Division*, 66 Or App 313, 674 P2d 64 (1984); *see also Sothras v. Employment Division*, 48 Or App 69, 77, 616 P2d 524 (1980) ("[A] protracted, unpaid leave of absence is not a 'reasonable alternative' to leaving work and being unemployed; indeed it is not an *alternative* at all." (emphasis in original)). In *Taylor*, the claimant was suspended without pay after a dispute with his employer. 66 Or App at 315. The claimant initially contested the suspension but ultimately agreed to a settlement which included terminating his employment. *Id.* Both the referee and the EAB concluded that the claimant had a reasonable alternative to accepting the settlement because he could have continued the appeals process to protect his existing employment. *Id.* We reversed and remanded that decision on the ground that the referee and the EAB overlooked the undisputed fact that the suspension was without pay and that the claimant consequently had no possibility of work-related income from the employer until the dispute was resolved. *Id.* at 316. We concluded that, because of that failure to consider the fact that the suspension was without pay, EAB failed to establish a rational nexus between the facts and the reasoning supporting a denial of unemployment compensation. *Id.* at 316-17.

Here, unlike the claimant in *Taylor*, claimant continued to receive front-end manager bonuses and medical benefits while on medical leave. The record indicates that the bonuses were equivalent to one percent of the store's profits and that the bonuses were discontinued only after claimant

---

[1] Failure to reinstate claimant to her position as front-end manager/cashier formed the basis of claimant's BOLI claim.

agreed to the terms of the termination agreement. The record, however, does not indicate the amount of the bonuses. If claimant's contention is that the amount of the bonuses she received was so insubstantial that remaining on medical leave was an unreasonable alternative, it was incumbent on claimant to enter evidence of that amount into the record. The same reasoning applies to the medical benefits claimant received from employer. Claimant also failed to place into evidence the value of the medical benefits that she received. Those medical benefits were also discontinued only after claimant agreed to the terms of the termination agreement. Based on the evidence before it, EAB made a rational decision when it concluded that remaining on medical leave was a reasonable alternative for claimant.

We therefore conclude that claimant failed to demonstrate that it was unreasonable for her to remain on medical leave and continue to pursue a return to her regular job duties with employer. We affirm EAB's decision.[5]

Affirmed.

---

[5] Because we affirm on that basis, we do not address the other bases for EAB's decision.