Argued and submitted March 5, reversed and remanded April 21, 2010

Carlo D. ALCALA,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Esco Corporation,
*Respondents.*

Employment Appeals Board
08AB1411; A139815

230 P3d 59

Rankin Johnson IV argued the cause for petitioner. With him on the brief was Law Office of Rankin Johnson IV, LLC.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

No appearance for respondent Esco Corporation.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Claimant seeks judicial review of an Employment Appeals Board (board) decision denying unemployment insurance benefits. He contends that the board erred in determining that his submission of a memorandum to a representative of the employer's human resources department, in which he complained about his department manager and other supervisors, constituted disqualifying "misconduct" and, specifically, violated the employer's reasonable expectations that an employee not engage in "disrespectful" conduct. We conclude that the board's determination in that regard is not supported by substantial reason and, accordingly, reverse and remand. ORS 183.482(8).

The circumstances of claimant's discharge, as recounted in the board's decision, are, for purposes of our review, undisputed. Claimant began working for employer in September 2002. The employer had an employee handbook, which was provided to claimant and which, at all material times, encouraged employees to talk with their supervisors or managers about their concerns and further stated:

> "If your management team is unable to help you or you are uncomfortable discussing your concern with them, you should feel free to contact a member of the Human Resources or Legal Departments."[1]

The handbook also provided, "Employees will face no reprisals for 'whistle blowing' or reporting in good faith any actions that they feel may violate the law or the [employer's code of conduct]." (Boldface omitted.)

From time to time, including on several occasions in 2007, claimant sent complaints about his supervisors' conduct and treatment of subordinates to the corporate compliance committee and others "up the chain of command."

On March 12, 2008, claimant became upset when a supervisor from another work area took issue with his work performance. In response, claimant told the supervisor to get

---

[1] "Another option," according to the handbook, was "to contact a member of [employer's] Corporate Compliance Committee directly or by mail."

out of his work area. As a consequence, claimant was suspended from work for five days for "insubordination and disrespectful behavior."

When claimant returned to work, his department manager, Farber, gave him a letter titled "Final Written Warning." That letter stated:

> "You have received three formal correction action letters in the past, for various reasons, and this will be your final chance to change your behavior at work. You were recently suspended on March 12th, for five days, for insubordination and disrespectful behavior. You admitted that you wished [that] you had not done what you did, and said it would not happen again. This is your final opportunity to ensure this type of behavior does not reoccur.
>
> "* * * * *
>
> "* * * [I]f you feel there are issues you have with a Team Leader or any management, please come and speak with me [Farber] about it; do not be insubordinate or disrespectful. If you do not feel you are receiving any resolution, you are welcome to go to the Human Resources department as well."

Approximately four weeks later, on April 9, claimant wrote and delivered a letter/memorandum to Plath, a representative of employer's human resources department, who had previously invited claimant to discuss concerns with him. Claimant began that submission by stating, "I wanted to communicate with you about my work environment." Claimant then recounted a work-related incident that, in his view, showed that Farber and other supervisors were seeking some pretext to discharge him. Claimant's submission to Plath concluded:

> "Just as I and many others can prove to you, [Farber] and his team will lie for each other, scheme, single out, threaten, try to intimidate and basically make work hell for you. Something needs to be done. You seem fair and just. Many employees will appreciate your work. Just wanted you to feel a day in the life of me."

Claimant appended a list of "employees that can verify [that] sometimes employees are treated poorly" and a one-sentence statement from two employees who said that they had seen

Farber double-checking claimant's work after he had left for the day.

Employer then discharged claimant for what it characterized as "insubordinate and disrespectful" behavior. The Employment Department denied claimant's ensuing claim for unemployment benefits, deeming claimant's letter to Plath to be "disrespectful to his team leaders and the manager" and to constitute disqualifying misconduct. An administrative law judge subsequently set aside that denial, reasoning as follows:

> "[T]he persuasive evidence failed to show that claimant's behavior fits within the [applicable] law as disqualifying misconduct. Claimant's reaction to [the supervisor on March 12] was inappropriate; however, his discharge came one month later, immediately after claimant's April 9[ ] memo to Mr. Plath from human resources. Claimant had a history with Plath[,] and Plath encouraged claimant to come to him with issues. Claimant was merely complying with this offer. The language utilized by claimant in the memo was not directed at any supervisor, but was merely claimant's opinion expressed to a human resources representative. Disqualifying misconduct has not been shown."

Employer appealed, and the board reversed, reinstating the department's denial. With respect to misconduct, the board concluded:

> "Claimant's April 9, 2008 memo violated the employer's reasonable expectations. Claimant's department manager instructed claimant to take any concerns about team leaders and managers to the department manager and then to other sources if the manager did not resolve his concerns. Instead, claimant bypassed the manager and took his concerns directly to a human resources representative. In the memo he submitted to the human resources representative, claimant accused the department manager and his other supervisors of lying, scheming, threatening, and intimidating employees. Claimant knew or should have known that such comments were disrespectful. His conduct was at least a wantonly negligent violation of the employer's reasonable expectations."

The board further determined that claimant's "disrespectful" conduct in writing and submitting the April 9 memo to Plath

was not an "isolated instance of poor judgment," OAR 471-030-0038(3)(b), given "[c]laimant's repeated displays of disrespectful conduct," including his previous complaints about supervisors' conduct and the March 2008 incident that led to his suspension. Finally, the board determined that claimant's conduct was not a good faith error, in that, although claimant may have believed that he was entitled to convey concerns about his manager to the human resources department, he "did not believe that he was entitled to make disrespectful statements about the manager and other supervisors" in expressing such concerns.

On review, claimant contends, principally, that the board erred in deeming his submission of the April 9 memo to Plath to be disqualifying "misconduct" within the meaning of OAR 471-030-0038(3).[2] He alternatively contends that, in all events, that conduct was, at worst, an isolated instance of poor judgment or represented a good faith error. OAR 471-030-0038(3)(b).

Claimant's challenge is framed and phrased generally. Nevertheless, we understand him to posit that the board's operative determinations, particularly with respect to misconduct, were not supported by "substantial evidence in the record." ORS 183.482(8)(c). As we recently reiterated in *Castro v. Board of Parole*, 232 Or App 75, 83, 220 P3d 772 (2009), that challenge, in turn, implicates an inquiry into whether the board has "adequately explain[ed] the logical connection between the evidence in the record and its [operative] conclusion"—*i.e.*, "substantial reason." (Emphasis omitted.) *See also Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005) ("Where a petitioner argues that an order is not supported by substantial evidence, a

---

[2] OAR 471-030-0038(3) provides, in part:

"(a) As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b) Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct."

court will also review the order for substantial reason to ensure that the order articulates the reasoning that leads from the facts found to the conclusions drawn.").

We conclude that the board's decision is not supported by substantial reason. The premise of the board's determination that claimant had engaged in disqualifying "misconduct" is that claimant's submission of the April 9 memorandum to Plath constituted "disrespectful conduct" violating the employer's reasonable expectations.[3] The board did not explain how, or why, logically that conduct could reasonably be deemed to be "disrespectful."

In particular, as claimant emphasizes: (1) Claimant's submission of the April 9 memorandum complied with the process authorized and invited by the employee handbook, as well as Plath's specific invitation,[4] and (2) the board rendered no findings as to the accuracy of claimant's complaints about his manager's and supervisors' alleged misconduct towards him and other employees—that is, the board did not find that claimant's complaints were somehow unjustified. The board did not address the significance of those considerations, individually or in combination. That is, the board did not explain how, or why, an employee's submission of (at least arguably) truthful complaints about his or her supervisors' conduct to the employer's human resources department, in accordance with the employer's prescribed procedures, can, logically, be deemed to be "disrespectful" conduct violating the employer's reasonable expectations.[5]

In the absence of some acknowledgment and reasoned consideration of those concerns, the board's conclusion that claimant engaged in disqualifying misconduct "is an

---

[3] The board's decision was predicated solely on the purportedly "disrespectful" character of claimant's conduct. The board did not refer to, or rely on, the employer's alternative characterization of claimant's conduct as "insubordinate."

[4] The board made no finding that claimant gave the memorandum to anyone other than Plath or otherwise published its contents within the workplace.

[5] To be sure, some of the language that claimant employed—e.g., "lie," "scheme," and "make work hell for you"—might have been phrased more artfully or diplomatically. Nevertheless, and nuance notwithstanding, the core, unavoidably negative connotation would have been the same. That is, there is no "nice" way to say that someone has "lied" or "schemed," but such allegations, if warranted, are not innately "disrespectful."

announcement, not an explanation." *Castro*, 232 Or App at 85. That defect precludes meaningful judicial review of the board's decision. *Id.* ("It gives us nothing to judicially review."); *Salosha, Inc.*, 201 Or App at 146 ("An unreasoned order substantially affects a party's statutory right to meaningful judicial review[.]").

Reversed and remanded.