Argued and submitted January 8, affirmed December 29, 2010

Brian J. STACY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Landservices, Inc.,
*Respondents.*

Employment Appeals Board
08AB2395; A141121

252 P3d 326

Patty Rissberger argued the cause for petitioner. On the brief were Craig A. Crispin and Crispin Employment Lawyers.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Landservices, Inc.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Claimant seeks judicial review of an Employment Appeals Board (the board) decision denying him unemployment benefits because he voluntarily left his employment without good cause. On appeal, claimant contends that he left work with good cause because he was subjected to discrimination and harassment based on his status as a Native American. Claimant argues that the board's findings and conclusions to the contrary are not supported by the record. Although we agree with some of claimant's criticisms of the record, ultimately we affirm the board's finding that claimant voluntarily left work without good cause because he had a reasonable alternative to leaving work.

We take the following facts from the record; any disputed facts are noted where appropriate. Employer hired claimant for a landscape maintenance position. Initially, claimant worked with Haney as part of a two-member maintenance crew. Haney was the lead person and directly supervised claimant. About two weeks after he was hired, claimant voiced a concern at a company-wide safety meeting about the use of racially based derogatory comments in the workplace and indicated that such behavior was inappropriate. Haney was on vacation at the time of the meeting. Whether claimant directly identified Haney as the source of the racial comments is disputed, but it is generally accepted that everyone knew he was referring to Haney.

One of employer's managers, McPherson, spoke with claimant after the safety meeting and asked him to first bring such concerns to management before announcing them at a company-wide meeting. On a Thursday, about a month after the safety meeting, claimant approached employer's president, Faunt, and informed him that Haney continued to use racially derogatory language and that he intended to quit because of it. That day, employer moved claimant off of the maintenance crew and into a position with employer's construction crew, so that he would no longer work directly with Haney. Claimant testified that, on that same morning, Haney "stood out [in the yard] and he was telling everybody how I needed to be suspended for causing problems for him,

because I—I couldn't work under those conditions." Claimant worked that Thursday on the construction crew.

Claimant testified that, the following Sunday, Haney called him at home and screamed at him about a $20 debt that he owed Haney. Claimant stated that Haney called him a "fucking Indian" and that, after he hung up on Haney, Haney called him back twice more that night to continue to berate him with further obscenities. Haney denied using any expletives or racial slurs during the phone call when questioned later by employer. Claimant called Faunt that Sunday night and left a voice message about Haney's telephone calls. Faunt testified that it was during that call that claimant informed him for the first time of the type of racial language that Haney was using in the workplace. The next morning, claimant informed Faunt that he had had enough and could not work under the conditions he was experiencing. He never returned to work.

The Employment Department denied claimant's ensuing claim for unemployment benefits, and an administrative law judge affirmed. Claimant appealed, and the board affirmed, concluding that claimant voluntarily left work without good cause.

ORS 657.176(2)(c) disqualifies a person who "[v]oluntarily left work without good cause" from receiving unemployment compensation benefits. A claimant for unemployment benefits has the burden of proving good cause by a preponderance of the evidence. *Young v. Employment Dept.*, 170 Or App 752, 756, 13 P3d 1027 (2000). Voluntary termination of employment for good cause requires the employee to articulate a reason that would compel a reasonably prudent person, "of normal sensitivity, exercising ordinary common sense," to quit under similar circumstances. OAR 471-030-0038(4). "[T]he reason must be of such gravity that the individual has no reasonable alternative but to leave work." *Id.* Whether good cause exists requires a factual evaluation based on the particular circumstances of each case. *Stevenson v. Morgan*, 17 Or App 428, 433, 522 P2d 1204 (1974).

The board's order denying unemployment benefits to claimant is based on alternative reasons and conclusions.

First, the board concluded that claimant failed to demonstrate that he was subjected to racial discrimination or that Haney used racial slurs in the workplace. Accordingly, the board concluded that claimant failed to articulate a cause that would compel a reasonably prudent person to quit under similar circumstances. Second, the board concluded that, even if claimant had demonstrated racial discrimination or the use of racial slurs by Haney, he had reasonable alternatives to leaving work—that is, either confronting Haney directly about the offensive conduct or allowing employer additional time to investigate his complaints and determine an appropriate solution.

On appeal, claimant generally contends that the record does not support the board's conclusions. As such, we understand claimant to argue that the board's conclusion that claimant voluntarily left work without good cause is not supported by substantial evidence in the record. ORS 183.482(8)(c). Therefore, we review the board's factual findings for substantial evidence, which exists when "the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* A substantial evidence challenge also requires us to review the board's order for substantial reason to ensure that the order "articulates the reasoning that leads from the facts found to the conclusions drawn." *Alcala v. Employment Dept.*, 235 Or App 32, 37-38, 230 P3d 59 (2010) (internal quotations marks omitted).

We first address the board's conclusion that claimant failed to articulate a cause that would compel a reasonably prudent person to quit under similar circumstances. That conclusion contains two components: that claimant failed to prove (1) racial discrimination or (2) the use of racial slurs. We review the findings of fact that support each component for substantial evidence.

As to the first component, although claimant testified that Haney used racially charged language, he never averred that he was treated differently because of his status as a Native American; he simply testified that he found Haney's use of racial slurs offensive and unacceptable. Accordingly, claimant did not demonstrate that he was discriminated against because of his race or ethnicity. *See* ORS

659A.030 (prohibiting discrimination because of race, color, or national origin).

■    Nevertheless, racial discrimination as defined by law is not required for purposes of showing "good cause" under ORS 657.176(2)(c). Because good cause requires a factual evaluation of the circumstances of each case, being subjected to racial, ethnic, or sexual slurs could provide good cause for an employee to voluntarily quit. *See McPherson v. Employment Division*, 285 Or 541, 556-57, 591 P2d 1381 (1979). The board, however, did not reach that issue in this case because of the second component of its conclusion that claimant had failed to articulate a cause that would compel a reasonably prudent person to quit: that claimant failed to demonstrate that Haney had used racial slurs in the workplace.

■    The board determined that employer rebutted claimant's allegations that Haney made racial remarks "with first-hand testimony about [Haney's] workplace conduct." In support of that conclusion, the board cites testimony by employer's president and by a manager that Haney "did not make such remarks in the workplace" and that employer's investigation into Haney's conduct did not reveal any reports that substantiated claimant's allegations. Claimant contends that the only "firsthand" testimony in the record is from him and that the testimony on employer's behalf was simply that Haney denied the allegations when asked about making racial slurs. Haney was not called as a witness.

■    Under the substantial evidence standard, we must determine if a reasonable person could find that, based on the evidence as a whole in the record, Haney did not make racial slurs. In reviewing the "whole record," we consider evidence that would detract from, as well as support, the board's order. *Cole / Dinsmore v. DMV*, 336 Or 565, 584, 87 P3d 1120 (2004). Notably, the only evidence in the record that supports the board's finding and conclusion that employer rebutted claimant's direct testimony about Haney's use of racial slurs is testimony by employer's representatives that Haney stated that he did not use any such language. Such testimony is hearsay. OEC 801(3) (defining hearsay as a statement by other than

the declarant offered in evidence to prove the truth of the matter asserted).

■ As a general rule, hearsay evidence can be considered in an administrative case, ORS 183.450(1), and under certain circumstances may even amount to substantial evidence. *Coffey v. Employment Dept.*, 147 Or App 649, 653, 938 P2d 805 (1997). To determine if hearsay evidence constitutes substantial evidence in a particular case, we must examine it in light of the factors cited in *Reguero v. Teacher Standards and Practices*, 312 Or 402, 418, 822 P2d 1171 (1991). *Cole*, 336 Or at 571. Briefly, those factors are:

> "(1) the alternative to relying on the hearsay evidence; (2) the importance of the facts sought to be proved by the hearsay statements to the outcome of the proceeding and considerations of economy; (3) the state of the supporting or opposing evidence, if any; (4) the degree of lack of efficacy of cross-examination with respect to the particular hearsay statements; and (5) the consequences of the decision either way."

*Id.* at 585.

We conclude that the first four factors weigh in favor of claimant, and that the fifth factor does not favor either party. The clear alternative to relying on the hearsay statements was to have Haney testify, and nothing in the record demonstrates why he did not. Haney's failure to testify deprived claimant of the opportunity to cross-examine him and, in a situation such as this, where Haney and claimant were the only people present at the time that Haney allegedly used the racial slurs, the potential effect of cross-examination might have been significant. *See Reguero*, 312 Or at 421 ("When unsworn hearsay constitutes the major * * * support for the administrative decision, the importance of providing the adversary * * * with the opportunity to * * * cross-examin[e] * * * declarant[ ] * * * is undeniable."). The opposing evidence is claimant's testimony about Haney's conduct, and employer's hearsay evidence that Harney did not make racial slurs is essential to the board's finding that claimant quit without good cause. That is, the board found that claimant quit without good cause because he did not prove that he was subjected to racial slurs. Given our analysis of the

*Reguero* factors, the hearsay statements offered by employer do not provide substantial evidence to support the board's finding that employer rebutted claimant's allegations of racial slurs in the workplace.

■     Nevertheless, as noted above, the board also affirmed on the alternative basis that, even if claimant proved that racial discrimination or racial slurs were used by Haney in the workplace, claimant had a reasonable alternative to leaving work. First, the board concluded that claimant could have directly confronted Haney about his conduct, rather than quit work. Second, the board concluded:

> "Finally, even if claimant had shown that he received disparate treatment because he was Native American, or [had] shown that he had been subject to derogatory racial remarks in the workplace, claimant still failed to show good cause for leaving work. Claimant did not provide the employer with any specific information about [Haney] or the content of [Haney's] remarks until [the day before he quit]. He left work before allowing the employer time to investigate his complaints or determine the appropriate remedy. Continuing to work while allowing the employer time to resolve his concerns was a reasonable alternative to leaving work."

Initially, we note that the board failed to articulate why "[c]onfronting [Haney] was a reasonable alternative to leaving work." That is, the board failed to explain why claimant's decision to raise his concerns with employer, rather than confronting Haney directly, supports the conclusion that he left work without good cause. *See Alcala*, 235 Or App at 38-39 (concluding that the board's failure to explain how, or why, conduct could reasonably be deemed to be "disrespectful" was an announcement, not an explanation).

Nevertheless, we agree with the board's alternative conclusion that claimant "left work before allowing the employer time to investigate his complaints or determine the appropriate remedy," and, thus, he had a reasonable alternative to leaving work.

The board concluded that "[c]ontinuing to work while allowing the employer time to resolve his concerns was

a reasonable alternative to leaving work." The board's conclusion relied on the following findings of fact: (1) that claimant did not provide any specifics about the racial comments to employer at the safety meeting; (2) that, based on claimant's initial report at the safety meeting, employer investigated Haney's conduct and asked claimant to be patient; (3) that, when claimant again raised concerns on the Thursday before he quit, employer reassigned claimant to another section of the company while conducting further investigation; (4) that, on receiving claimant's voice message about Haney's calls to claimant's home, employer contacted Haney and instructed him to avoid calling claimant at home, and it was at this time that employer first heard the specific language that Haney was alleged to have used; and (5) that claimant did not report to work the following Monday. Accordingly, the board concluded that, because employer lacked any specifics about the content of Haney's remarks until the day before claimant quit, he quit before allowing employer "time to investigate his complaints or determine the appropriate remedy."

Claimant argues that the record lacks substantial evidence to support the board's findings. He claims that he raised Haney's conduct as an issue early in his employment and that employer took no action other than to tell claimant that he should not raise such concerns at a company-wide safety meeting. Claimant then contends that his complaints were met with calls for claimant's suspension by Haney and that, because employer failed to stop that conduct, claimant was subjected to racially insulting calls to his home. Further, claimant contends that he provided employer with specific information, citing testimony by employer that claimant raised complaints of inappropriate conduct in the safety meeting approximately one month before claimant quit.

The board's conclusion that claimant left work without good cause is rationally related to its findings of fact, which are themselves supported by substantial evidence. Our role is not to substitute our judgment for that of the board, but rather to determine if the findings of fact are supported by substantial evidence. Although there is conflicting evidence in the record as to how specific claimant was in reporting Haney's conduct, the evidence viewed as a whole

would allow a reasonable person to find that employer initially investigated claimant's complaints, which were not specific, and that, when claimant again complained but with more specificity, employer took the step of moving claimant to another section of the company while continuing to investigate and develop an appropriate remedy. The board's findings of fact are rationally related to its conclusion that claimant had a reasonable alternative to leaving work before the investigation was complete and employer had time to remedy the situation. *See Pinto v. Employment Div.*, 122 Or App 616, 620, 858 P2d 177 (1993) (stating that an employee must show that there were no reasonable alternatives to leaving work or that a discussion of the alternatives would be futile).

Affirmed.