Argued and submitted September 16, reversed and remanded
November 19, 2014

OREGON PUBLIC UTILITY COMMISSION,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Jose R. Gonzalez,
*Respondents.*

Employment Appeals Board
12AB3103; A153227

340 P3d 136

Jona Jolyne Maukonen, Assistant Attorney General, argued the cause for petitioner. With her on the opening brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Denise G. Fjordbeck, Attorney-in-Charge. On the reply brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, and Jona Jolyne Maukonen, Assistant Attorney General.

Roger Hennagin and Roger Hennagin, P.C., filed the brief for respondent Jose R. Gonzalez.

No appearance for respondent Employment Department.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

The Public Utility Commission (employer) seeks review of a decision of the Employment Appeals Board that concluded that claimant voluntarily left work with good cause and was not disqualified from receiving unemployment insurance benefits. *See* ORS 657.176(2)(c).[1] In particular, the board found that claimant did not have the reasonable alternatives of seeking medical treatment or care and taking medical leave and concluded that claimant had good cause to leave work due to the effect of work-related stress on his health, specifically, the recurrence of asthma. Employer argues that the board's order lacks substantial evidence and substantial reason, and contends that a reasonably prudent person in claimant's position would not have quit his job. Claimant raises one "alternative cross assignment of error[,]" which we reject without discussion. We review the board's order "for substantial evidence, substantial reason, and errors of law." *Franklin v. Employment Dept.*, 254 Or App 656, 657, 294 P3d 554 (2013). We agree with employer that the board's order lacks substantial evidence and substantial reason. Accordingly, we reverse and remand.

Except as noted below, we summarize the facts from the board's findings and "the undisputed evidence in the record that is not inconsistent with those findings." *Campbell v. Employment Dept.*, 245 Or App 573, 575, 263 P3d 1122 (2011). In the 1980s, claimant developed asthma. His condition was treated with medication, and it "basically went away" for a number of years—that is, "his condition was sufficiently controlled such that he did not require medical treatment." In 2004, employer hired claimant to work as "administrator of safety reliability and security division."

At some point on or before April 17, 2012, employer was presented with some "concerning" information about claimant. A law enforcement agency commenced an

---

[1] ORS 657.176(2) provides, in part:

"An individual shall be disqualified from the receipt of benefits *** if the authorized representative designated by the director finds that the individual:

"*****

"(c) Voluntarily left work without good cause[.]"

investigation, instructed employer "to keep the 'concerning' information confidential," and directed employer to withhold from claimant information about the reason for the investigation and law enforcement's involvement in the investigation.

On April 17, 2012, employer's representatives, including claimant's supervisor and the human resource manager, "met with claimant and 'duty-stationed' claimant at home, with pay, for an indefinite period pending the completion of an administrative investigation, [and] then escorted him from the building." Claimant asked, but he was not told, why he was duty-stationed at home. The only "'work' that was expected" of claimant while he was duty-stationed at home was to be available to employer by telephone during work hours. Claimant continued to accrue hours for vacation and medical leave, and he was informed by letter that he could request vacation or medical leave when needed.

Claimant then experienced a recurrence of his asthma, which he attributed to the stress associated with his job. Before being duty-stationed at home, claimant regularly used his treadmill for exercise. His asthma symptoms worsened to the point that he could no longer exercise and had difficulty breathing. However, "[c]laimant's symptoms did not prevent him from being duty-stationed at home and available to the employer" during work hours, which, as noted, "was all the 'work' that was expected of him during the period at issue."

Around May 4, 2012, claimant heard from coworkers that employer had sealed his office and that a coworker had been barred from his office due to the investigation. Claimant's asthma grew progressively worse. He was concerned about his reputation after being escorted out of the office, and he "thought his reputation would be irreparably damaged if he was also fired" from his position. On May 4, 2012, claimant tendered his resignation.

On May 21, 2012, after his resignation, "claimant sought medical treatment for his asthma." His condition was serious enough that he required steroid injections, and

he was placed on two prescription medications to treat his condition.

Claimant subsequently sought unemployment insurance benefits from the Employment Department, which denied claimant benefits on the ground that he voluntarily left work without good cause. Claimant requested and received a hearing, and an administrative law judge (ALJ) issued an amended final order that also denied claimant benefits on the ground that he voluntarily left work without good cause. In that order, the ALJ stated that "[c]laimant may very well have considered the debilitating asthma attacks grave, despite the fact that he neither missed work nor sought medical care while employed[,]" but, if gravity existed, "claimant had the reasonable alternatives of consulting a physician, tendering medical documentation to the employer and/or taking medical leave for treatment."

Claimant appealed to the board, and the board disagreed with the ALJ. The board first found that claimant did not have the reasonable alternatives of seeking medical treatment or care for his asthma and taking medical leave, stating:

> "While a reasonable and prudent working asthmatic might reasonably be expected to seek medical treatment and request accommodation prior to leaving work for health reasons, substantial evidence fails to support that doing so was a reasonable alternative for this claimant. Claimant had asthma for over 20 years, and his condition was sufficiently controlled such that he did not require medical treatment, until he was duty-stationed at home, which triggered the 'debilitating asthma attacks' the ALJ mentioned in his decision.

> "Claimant's symptoms did not prevent him from being duty-stationed at home and available to the employer between certain hours, which was all the 'work" that was expected of him during the period at issue. There is no record evidence that medical leave from such 'work' would have offered claimant any relief from his stressful employment relationship, and so was not a reasonable alternative. Nor is there any record evidence that medical care could have offered relief."

The board then concluded that claimant "voluntarily left work with good cause" and was "not disqualified from receiving unemployment insurance benefits because of his work separation." The board reasoned:

"At the time claimant quit work, he had been duty-stationed at home for approximately three weeks, without being told why, without being told why he could not be told why, and without being given any information about the status [of] pending matters or when he might expect to return to work. His foreseeable work-related stress resulted in serious physical symptoms (asthma attacks) that persisted for six months, up until the time of hearing, at which time the employer still could not disclose the reason for the ongoing investigation and his office remained locked and sealed. Claimant's concerns about the irreparable harm to his reputation and future prospects resulting from being 'walked out' of his office and possibly fired no doubt aggravated his physical symptoms. Under such circumstances, no reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would continue the employment relationship beyond May 4th."

As noted, an individual who "[v]oluntarily left work without good cause" is disqualified from receiving unemployment benefits. ORS 657.176(2)(c). OAR 471-030-0038(4) provides:

"Good cause for voluntarily leaving work under ORS 657.176(2)(c) is such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. For an individual with a permanent or long-term 'physical or mental impairment' (as defined at 29 CFR §1630.2(h))[2] good cause for voluntarily leaving work is such that a reasonable and prudent person with

---

[2] 29 CFR § 1630.2(h) provides:

"*Physical or mental impairment* means—

"(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

"(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities."

(Emphasis in original.)

the characteristics and qualities of such individual, would leave work. Except as provided in OAR 471-030-0038(5)(g), for all individuals, the reason must be of such gravity that the individual has no reasonable alternative but to leave work."

It is the claimant's burden to prove, by a preponderance of the evidence, that he voluntarily left work with good cause, *Young v. Employment Dept.*, 170 Or App 752, 756, 13 P3d 1027 (2000), that is, that "a 'reasonable and prudent person' would consider the situation so grave that he or she had no reasonable alternative to quitting." *McDowell v. Employment Dept.*, 348 Or 605, 612, 236 P3d 722 (2010). Claimant had asthma, and the parties appear to agree that asthma is a long-term physical impairment. Thus, the question in this case is whether, based on the evidence in the record, "a 'reasonable and prudent person'" in claimant's position— having the characteristics and qualities of an individual with asthma—would have considered the situation so grave that he or she had no reasonable alternative but to voluntarily leave work. *Id.*

Employer first argues that certain findings made by the board are not supported by substantial evidence. *See Warkentin v. Employment Dept.*, 245 Or App 128, 132-33, 261 P3d 72 (2011) (stating that "ORS 183.482(8)(c) requires an appellate court to set aside or remand an agency order when the order is not supported by substantial evidence in the record"). We write only to address employer's contention that the board erred when it found that there is no "record evidence that medical care could have offered [claimant] relief" and that "[t]here is no record evidence that medical leave from * * * 'work' would have offered claimant any relief from his stressful employment relationship[.]"

We agree with employer that at least portions of those findings are not supported by substantial evidence. The undisputed evidence shows that that claimant did not seek medical treatment or care for his asthma until May 21, 2012—17 days after his resignation. The undisputed evidence also shows, and the board found, that, when claimant had previously suffered from asthma, he was able to treat his condition with medication so that it "basically went

away." Thus, the record does not support the board's determination that there is no evidence that medical care could have provided relief to claimant.

We turn to the board's finding about medical leave. To the extent that the board meant to suggest that leave was not available to claimant, the record does not support that finding. Rather, the undisputed evidence shows that claimant had "multiple options" available for leave, including medical leave; employer's representative testified that claimant, even though he was duty-stationed at home, was at liberty to call in sick if he thought that was needed, and claimant was informed by letter that he could request medical leave. To the extent that the board found that medical leave would not have offered claimant relief, that may be true—but it is beside the point because, as we discuss below, 267 Or App at 75-76, leaving work did not offer claimant relief, either.

Employer also argues that the board's conclusion that claimant had good cause to voluntarily leave work is not supported by substantial reason and that a reasonably prudent person in claimant's position would have sought medical treatment or care or medical leave before voluntarily leaving work. *See Warkentin,* 245 Or App at 134 ("As part of our review of an agency's findings for substantial evidence, we look at whether the findings provide 'substantial reason' to support the legal conclusion reached by the agency."). In part, we again agree with employer.

To the extent that the board concluded that claimant had good cause to leave work because seeking medical treatment or care was not a reasonable alternative, that conclusion was based on a lack of record evidence and, therefore, was not supported by substantial reason. Claimant, who bore the burden of proof, submitted no evidence that he could not have sought medical treatment or care before he resigned, and the evidence shows that claimant could have and should have pursued those alternatives in light of his earlier success after seeking medical assistance for his asthma. As we have noted above, it is claimant's burden to prove that "a 'reasonable and prudent person'" in claimant's position—having the characteristics and qualities of

an individual with asthma—would have considered the situation so grave that he or she had no reasonable alternative but to voluntarily leave work. *McDowell*, 348 Or at 612; *see Young*, 170 Or App at 757 (claimant failed to meet her burden to "prove that remaining on medical leave was not a reasonable alternative"). Because the lack of evidence defeats, rather than establishes, claimant's claim, there is no "basis in reason" for the board's contrary conclusion. *See City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981) (stating the test for substantial reason as "whether there is a basis in reason connecting the inference [of compliance with the decisional standard] to the facts from which it is derived").

To the extent that the board concluded that claimant had good cause to voluntarily leave work due to his work-related stress, specifically, his "concerns about the irreparable harm to his reputation" due to "being 'walked out' of his office" and investigated[,]" that conclusion is also not supported by substantial reason. We pause to highlight an important underlying principle—for a claimant to have good cause to voluntarily leave work, the claimant must derive some benefit from leaving work. For example, a claimant may have good cause to voluntarily leave work when leaving work averts the grave consequences associated with an impending discharge, *McDowell*, 348 Or at 620, or ends the substantial risk of continuing underpayment, *Nielsen v. Employment Dept.*, 263 Or App 274, 278, 328 P3d 707 (2014). In this case, the board implicitly acknowledged that principle when it stated, "There is no record evidence that medical leave from such 'work' *would have offered claimant any relief* from his stressful employment relationship, and so was not a reasonable alternative. Nor is there any record evidence that medical care *could have offered relief*." (Emphases added.)

Although the board appears to acknowledge that legal principle, the board misapplied that principle here. Claimant's concern about the irreparable harm to his reputation cannot, in this case, constitute good cause to voluntarily leave work because there is no evidence that leaving work would have alleviated that concern—that is, claimant's resignation could not undo the past, and claimant

submitted no evidence that he could, by resigning his position, stop the investigation that was underway at the Public Utility Commission.[3] Thus, claimant submitted no evidence that, by voluntarily leaving work, he derived the benefit of alleviating his "concerns about the irreparable harm to his reputation" due to "being 'walked out' of his office" and investigated. Indeed, by stating that the harm to claimant's reputation was "irreparable[,]" the board appears to suggest that claimant could not repair his reputation, and thus, it does not follow from the facts that claimant had good cause to voluntarily leave work on that basis.

Finally, to the extent that the board concluded that claimant had good cause to leave work due to his concern about being "possibly fired," that conclusion is also not supported by substantial reason. We note that, in certain cases, impending termination and other factors may constitute good cause. For example, in *McDowell*, the Oregon Supreme Court concluded that the claimant, a probationary teacher, voluntarily left work with good cause, where the claimant had been advised "that there was 'absolutely no chance' that the school board would not discharge him[,]" the consequences of a discharge were grave, and the claimant had no "predismissal opportunity to be heard." 348 Or at 614-18. However, in this case, claimant submitted no evidence that he was facing termination at the time that he resigned. Indeed, when asked whether claimant could have "continued with his employment at PUC if he hadn't quit[,]" and if claimant would "have remained employed for some time period" if he had not resigned, employer's representative responded, "Correct." Claimant did not dispute employer's evidence that he could have continued to work while duty-stationed at home.

In sum, we agree with employer that the board's order lacks substantial evidence and substantial reason, and we conclude that the board erred in concluding that claimant voluntarily left work with good cause.

Reversed and remanded.

---

[3] In fact, the undisputed evidence shows that the investigation continued after claimant's resignation and was still ongoing at the time of the hearing.